Robert Irwin GWIN,
Plaintiff–Appellant,

v.

Wayne SNOW, Jr., et al.,
Defendants–Appellees.

Robert I. GWIN, Plaintiff–Appellant,

v.

Mobley HOWELL, et al.,
Defendants–Appellees.

Nos. 87–8514, 87–8518.

United States Court of Appeals,
Eleventh Circuit.

April 19, 1989.

Steven H. Sadow, Maloy, Sadow & Jenkins, Atlanta, Ga., for Robert Gwin.

Cathy A. Cox, State Law Dept., Atlanta, Ga., for Wayne Snow, Jr., et al. and Mobley Howell, et al.

Before JOHNSON, HATCHETT and COX, Circuit Judges.

HATCHETT, Circuit Judge:

Robert Gwin, the appellant, seeks review of the district court's grant of summary judgment to the individual members of the Georgia Board of Pardons and Paroles (Board), Georgia's Governor and Georgia's Attorney General.[1] The district court dis-

---

1. Gwin filed two actions in the district court; he challenged (1) the Board's parole procedures and denial of parole and (2) the denial of his request for compassionate leave. Gwin appealed the district court's grant of summary judgment in both cases. This court consolidated the

missed Gwin's claims challenging the Board's parole procedure and the Board's decisions denying Gwin parole and a compassionate leave. We affirm the district court's dismissal of all claims, excluding the equal protection claims. For the reasons discussed below, we reverse the district court's dismissal of Gwin's section 1983 equal protection claims challenging the Board's parole procedure and denial of compassionate leave.

## FACTS

Gwin, a black inmate of the Georgia Department of Corrections, is currently serving a life sentence for armed robbery of a white female. The state has incarcerated Gwin in the Georgia State Prison in Reidsville, Georgia. The Board, whose membership includes only one black person, has continually denied Gwin parole. In addition, the Board denied Gwin a compassionate leave when his mother died.

## PROCEDURAL HISTORY

After his first parole denial, Gwin filed a section 1983 action, without counsel, in the Northern District of Georgia. Gwin alleged that the racially imbalanced Board practiced racial discrimination by using both the victim's and the prisoner's race as criteria for its parole decisions. Gwin sought declaratory and injunctive relief, and $70,000 damages from each board member for alleged due process and equal protection violations.

On September 12, 1986, Gwin filed a second action in the Northern District of Georgia. This action resulted from the Board's refusal to grant Gwin a compassionate leave when his mother died. Gwin sued the Board's members and Georgia's Governor and Attorney General, alleging due process and equal protection violations in the Board's denial of compassionate leave. Gwin sought injunctive relief, damages, appointment of counsel, attorney's fees and costs, and a jury trial.

These actions came before the court on several of Gwin's motions and the Board's summary judgment motions.[2] The district court denied Gwin's motions to the extent that its decisions did not render them moot. The court denied Gwin's motion for counsel because it granted summary judgment to all defendants, and therefore Gwin failed to survive a dispositive motion. The court also found Gwin's disqualification motion meritless because Gwin merely alleged bias from the court's unfavorable evidentiary and legal rulings. The court determined that these rulings did not constitute a sufficient basis for disqualification. *See In re Corrugated Container Antitrust Litigation,* 614 F.2d 958 (5th Cir.), *cert. denied,* 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980) (plaintiff must demonstrate that the judge has a personal bias or prejudice either disfavoring the plaintiff or favoring the defendant). The court summarily denied Gwin's remaining motions.

The district court granted summary judgment to the Board and the other defendants on all claims. The court dismissed Gwin's due process claim for the Board's denial of parole and compassionate leave because the Georgia parole statute does not create a liberty interest in parole. Rather, the court concluded that the Georgia statute does not establish an expectancy of release, but merely gives the Board the discretion to act. *See Greenholtz v.*

---

appeals; therefore, this opinion decides the issues from both cases.

**2.** Gwin filed the following motions: (1) to determine the sufficiency of defendants' objections to plaintiff's request for admissions; (2) to strike; (3) for appointment of counsel; (4) for disqualification of judge; (5) to extend discovery; (6) for adjudication *seriatim;* (7) for protective order; (8) for contempt; (9) to modify the court's order of December 17, 1987; (10) for evidentiary hearing on *ex post facto* claim; (11) for stipulation permitting pretrial discovery plan and pretrial conference; (12) to supplement or correct the record; (13) for subpoena duces tecum; (14) for subpoena to produce witnesses; (15) to consolidate; (16) for appointment of magistrate to prepare pretrial order and for imposition of sanctions against counsel; (17) for appointment of counsel (plaintiff's second motion); (18) for relief from this court's order of February 13, 1987; (19) for *in camera* inspection; (20) to compel production of documents; (21) for injunctive relief; and (22) for summary judgment.

*Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (no due process violation unless state statute creates an entitlement to release or parole). The court also held that the Board's use of the 1984 parole guidelines did not violate the *ex post facto* clause of the Constitution.

The court similarly dismissed Gwin's remaining due process claims. First, the court held that Gwin did not have standing to challenge the Board's racial composition. According to the district court, Gwin failed to allege a concrete injury such as a denial of membership to the Board. To the contrary, the court found Gwin's alleged injury, a likelihood of discrimination, far too speculative to satisfy the standing doctrine's imminent injury component. *See Lamar v. Whiteside,* 606 F.2d 88, 89 (5th Cir.1979) (no standing where plaintiff claims that alleged racial imbalance will cause injury).

Second, the court dismissed Gwin's claim of a right to have access to his parole file. The court relied on our previous decision which holds that inmates do not have such a right. *See Slocum v. Georgia State Board of Pardons and Paroles,* 678 F.2d 940, 942 (11th Cir.1982), *cert. denied,* 459 U.S. 1043, 103 S.Ct. 462, 74 L.Ed.2d 612 (1982) (parole board's refusal to allow inmate to examine his file does not constitute a constitutional violation).

Finally, the district court dismissed Gwin's equal protection claims because Gwin did not exhaust his state remedies. The court concluded that Gwin's claims essentially constituted habeas corpus claims rather than section 1983 actions. Therefore, the court dismissed the claims without prejudice to allow Gwin to exhaust his state remedies.

## CONTENTIONS

Gwin contends that the district court improperly dismissed his claims in both actions. First, he contends that the district court improperly treated his section 1983 actions as habeas corpus claims requiring an exhaustion of state remedies. Second, Gwin contends that he suffered a judicially cognizable injury sufficient to give him standing to challenge the Board's racial composition. Third, Gwin contends that the Board's denial of access to his parole files violates his due process rights. Fourth, Gwin contends that the district court improperly concluded that the Georgia parole guidelines did not create a liberty interest in parole. Finally, Gwin contends that the Board's use of the retroactive amendment of the parole guidelines violates the *ex post facto* clause.

The Board contends that the district court properly dismissed Gwin's claims. According to the Board, Gwin does not have an entitlement to parole or to access his parole files. The Board also contends that Gwin has not suffered a sufficiently concrete injury to challenge the Board's racial composition. Finally, the Board contends that Gwin's equal protection claims essentially constitute unexhausted habeas corpus claims because he challenges the fact and duration of his confinement.

## ISSUES

Gwin raises the following issues on appeal: (1) Whether Gwin's equal protection claims constitute unexhausted habeas corpus claims; (2) whether Gwin has a due process right of access to his parole file; (3) whether the Georgia parole statute provides Gwin with a liberty interest in parole; (4) whether Gwin has standing to challenge the Board's racial composition; and (5) whether the Board's use of the retroactive amendment to Georgia's parole guidelines violates the *ex post facto* clause.

## DISCUSSION

### I. *The Equal Protection Claims*

Gwin contends that his equal protection claims did not constitute habeas corpus claims; therefore, he properly asserted these claims under section 1983 without exhausting state remedies. The Board contends that this case presents a question of first impression in this court. Accordingly, the Board urges us to adopt the Fifth Circuit's bright-line test which would require Gwin to bring these actions as habeas cor-

pus claims, and therefore require dismissal for failure to exhaust state remedies. The district court summarily concluded that Gwin's claims essentially constituted habeas corpus claims.

We disagree with the district court's dismissal of all of Gwin's claims. Although the court properly dismissed Gwin's challenge to his denial of parole, we find that neither the Supreme Court's nor this court's precedent compels us to treat Gwin's challenge to the Board's parole procedures or his denial of compassionate leave as habeas corpus claims.[3] To the contrary, the relevant decisions demonstrate that such claims constitute proper section 1983 claims which do not require the exhaustion of state remedies.

### A. Gwin's Section 1983 Equal Protection Claims Do Not Require Exhaustion of State Remedies

#### 1. *Supreme Court Authority*

We begin our analysis by examining the two seminal Supreme Court decisions in this area. The Supreme Court established the test for determining whether a prisoner's section 1983 claim essentially constitutes a habeas corpus claim, and therefore requires exhaustion of state court remedies, in *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). In *Preiser,* three New York state prisoners challenged the constitutionality of a disciplinary action which deprived them of good-time credits. The prisoners sought injunctive relief to compel the restoration of these credits. The Court held that the prisoners could only bring their action in a habeas corpus petition because they sought to reduce their period of confinement. The Court, however, specifically noted that these prisoners could have sought damages for the same allegedly unconstitutional disciplinary action under section 1983 without exhausting their state court remedies. *See Preiser,* 411 U.S. at 494, 93 S.Ct. at 1838–39, 36 L.Ed.2d at 453 (prisoner seeking damages does not attack the fact or length of confinement, therefore, habeas corpus is

not appropriate for such an action). Thus, the Supreme Court focused on the specific relief requested to determine whether the claim necessarily constituted a habeas corpus claim.

One year later, the Supreme Court reaffirmed this distinction between damages claims and injunctive relief claims which challenge the fact or duration of confinement when it decided *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Wolff,* a group of Nebraska prisoners challenged the prison's procedures for taking away good-time credits. The prisoners sought the restoration of good-time credits and damages. The court separated the prisoners' claims according to the requested relief. Relying on *Preiser,* the Court dismissed the section 1983 claims for restoring good-time credits because the prisoners had not exhausted their state court remedies. Turning to the damages claims, the Court held that the prisoners properly sought damages under section 1983 for the deprivation of civil rights resulting from the challenged procedures. *Wolff,* 418 U.S. at 554, 94 S.Ct. at 2973–74, 41 L.Ed.2d at 950.

The *Wolff* Court also addressed the propriety of seeking prospective injunctive relief under section 1983, and equated such a remedy with a damages claim; neither a prospective relief claim nor a damages claim challenges the fact or length of custody. Specifically, the Court noted that *Preiser* does not "preclude a litigant with standing from obtaining by way of ancillary relief an otherwise proper injunction enjoining the prospective enforcement of invalid prison regulations." *Wolff,* 418 U.S. at 555, 94 S.Ct. at 2974, 41 L.Ed.2d at 950. Since *Wolff,* the Court has consistently endorsed section 1983 claims which seek prospective injunctive relief to enjoin unconstitutional practices and procedures. *See, e.g., Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (injunctive relief compelling state to provide a probable cause determination is proper under section 1983); *Greenholtz v. Inmates*

---

**3.** The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions rendered

prior to October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

*of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (section 1983 challenge to constitutionality of Nebraska's parole procedures).

■■■ Integrating the *Wolff* and *Preiser* decisions, we see that the Court exclusively focused on the particular relief that the prisoners' requested to determine whether their complaints necessarily constituted habeas corpus claims. Under this analytical framework, a prisoner seeking injunctive relief which lessens the period of confinement must bring the claim in a habeas corpus petition. In contrast, individuals seeking damages claims or injunctive relief to prospectively enjoin unconstitutional procedures can use section 1983 and need not exhaust state court remedies. Finally, prisoners seeking both habeas corpus relief and proper section 1983 relief can proceed with their section 1983 claims without exhausting state court remedies while simultaneously exhausting state remedies for their habeas corpus claims. *See Wolff,* 418 U.S. at 554, 94 S.Ct. at 2973–74, 41 L.Ed.2d at 950 (Court allowed damage claims to proceed while dismissing claims for restoration of good-time credits for failure to exhaust state remedies).

### 2. *Former Fifth Circuit and Eleventh Circuit Authority*

Although our predecessor court recognized that the nature of the requested relief factored into the Court's analysis for distinguishing between proper and improper section 1983 actions, it repeatedly declined to interpret *Preiser* and *Wolff* as solely relying on the requested relief for determining the propriety of a section 1983 action. This interpretation stemmed from such court's pre-*Preiser* analysis for distinguishing between section 1983 and habeas corpus claims. *See Alexander v. Emerson,* 489 F.2d 285 (5th Cir.1973). In *Alexander,* the court refused to allow a prisoner to bring a section 1983 damages action for alleged constitutional violations during his arrest and the search of his apartment. The court reasoned:

In order to adjudicate petitioner's claim for damages this court would be required to hold the same hearings and make the same determinations as necessary on habeas corpus. To allow this suit is to say that every state prisoner may attack the alleged constitutional violation of his trial by two different methods—first, by habeas corpus for release from custody and secondly, by section 1983 for damages.

*Alexander,* 489 F.2d at 286 (quoting *Smith v. Logan,* 311 F.Supp. 898, 899 (W.D.Va. 1970)).

After *Preiser* and *Wolff,* the former Fifth Circuit continued to follow *Alexander,* dismissing unexhausted section 1983 claims which raised issues concerning the constitutionality of the conviction or confinement, regardless of the requested relief. *See Fulford v. Klein,* 529 F.2d 377 (5th Cir.1976), *adhered to in banc,* 550 F.2d 342 (5th Cir.1977); *Meadows v. Evans,* 529 F.2d 385 (5th Cir.1976), *adhered to in banc,* 550 F.2d 345 (5th Cir.), *cert. denied,* 434 U.S. 969, 98 S.Ct. 517, 54 L.Ed.2d 457 (1977). Fulford, a prisoner, sought money damages under section 1983, for the district attorney's alleged unconstitutional refusal to divulge exculpatory evidence. Although Fulford did not attack his conviction's validity, the court dismissed his section 1983 claim because he had not exhausted his state remedies. Refusing to repudiate *Alexander,* the court stated:

[W]e reject fulford's argument that the propriety of § 1983 actions may be determined solely on the basis of the relief sought.... [h]abeas corpus is the exclusive initial cause of action where the basis of the claim goes to the constitutionality of the state court conviction.

*Fulford,* 529 F.2d at 381.

The same day that it decided *Fulford,* the court in *Meadows* reinforced its approach for classifying prisoners' actions. Meadows sought money damages under section 1983 for alleged coercion, bribery, and improper prison conditions. *Meadows,* 529 F.2d at 386. The court rejected Meadows's contention that a damages claim for such conduct necessarily did not constitute

a habeas corpus claim. *Meadows,* 529 F.2d at 386 ("The mere assertion that Meadows seeks damages rather than release is insufficient to distinguish the case from a habeas corpus action...."). Rather, the court focused on the conduct which the prisoner attacked. The court dismissed the damages claims for coercion and bribery, but allowed the damages claim for improper prison conditions because the court concluded that only the prison conditions claim did not raise issues concerning Meadows's conviction. *Meadows,* 529 F.2d at 386.

In the years following *Fulford* and *Meadows,* the court did not recede from its narrow test. Rather, the court strictly refused to allow damages claims under section 1983 when such claims raised issues that could reduce the period of confinement. *See, e.g., Grundstrom v. Darnell,* 531 F.2d 272, 273 (5th Cir.1976) (necessary to exhaust state remedies where damages issue ultimately challenges validity of the criminal conviction); *Robinson v. Richardson,* 556 F.2d 332, 335 (5th Cir.1977) (no section 1983 claim for damages or injunctive relief for allegedly discriminatory use of peremptory challenges because prisoner's cause of action if successfully proven would question the validity of the prisoner's conviction, and such a finding would necessarily support his release from prison); *Johnson v. Hardy,* 601 F.2d 172 (5th Cir.1979) (prisoner could not challenge disciplinary hearing under section 1983 because "[h]is claims for declaratory and monetary relief [arose] solely as a result of this single allegedly defective hearing.").

Finally, a panel for our court has endorsed the former Fifth Circuit's test. Discussing the proper analysis, the panel stated:

> The damages versus equitable relief distinction is not a talisman, however. The proper rubric for a particular cause of action ought not be determined "solely on the basis of the relief sought," i.e., actions for money damages may go forward while actions for injunctive relief from incarceration may not.

*McKinnis v. Mosely,* 693 F.2d 1054, 1057 (11th Cir.1982) (quoting *Fulford,* 529 F.2d at 381). In *McKinnis,* the court held that a prisoner properly sought damages under section 1983 because the prison punished him prior to hearing. Despite this decision, the court applied the former Fifth Circuit's analysis of considering whether the action raised issues concerning the fact of the prisoner's confinement. *See McKinnis,* 693 F.2d at 1057 ("a cause of action seeking damages alone *and not challenging the fact or duration of confinement* may be brought under section 1983.") (emphasis added).

### 3. Comparison of Supreme Court's and This Court's Decisions

■ To the extent that this court's decisions prohibit prisoners' damages claims under section 1983, we believe such decisions extend beyond the permissible boundary for requiring exhaustion of state remedies. As stated above, under *Preiser* and *Wolff,* the requested relief is the dispositive criterion for determining whether an action can lie under section 1983. The *Preiser* Court specifically limited its holding to a situation where the prisoner only sought equitable relief despite its conclusion that an action seeking restoration of good-time credits constituted a habeas corpus claim. *See Preiser,* 411 U.S. at 494, 93 S.Ct. at 1838, 36 L.Ed.2d at 453 ("the [prisoners] sought no damages, but only equitable relief—restoration of their good-time credits —and our holding today is limited to that situation."). Furthermore, the Court clearly stated that the prisoners in *Preiser* could have brought a damages action under section 1983 to challenge the same conduct and raise the same issues:

> If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release—the traditional purpose of habeas corpus. In the case of a damages claim, habeas corpus is *not* an appropriate or available federal remedy. Accordingly, as petitioners themselves concede, a damage action by a state prisoner could be brought under the Civil Rights Act in federal court with-

out any requirement of prior exhaustion of state remedies. [Emphasis added.]

*Preiser,* 411 U.S. at 494, 93 S.Ct. at 1838, 36 L.Ed.2d at 453.

█ Adhering to this analysis in *Wolff,* the Court divided the prisoners' claims, allowing the damages claim to proceed under section 1983 while requiring exhaustion of state remedies for the claims requesting the restoration of good-time credits. The Court allowed the damages claim under section 1983 even though such claim raised the same issues as the restoration of good-time credit claim:

> Respondent's damages claim was therefore properly before the District Court and required determination of the validity of *the procedures employed for imposing sanctions, including loss of good-time,* for flagrant or serious misconduct.... [I]t was proper for the Court of Appeals and the District Court to determine the validity of the procedures for revoking good-time credits *and to fashion appropriate remedies for any constitutional violations ascertained, short of ordering the actual restoration of good time already canceled.* [Emphasis added.]

*Wolff,* 418 U.S. at 55, 94 S.Ct. at 2974, 41 L.Ed.2d at 950. Thus, *Preiser* and *Wolff* make "it perfectly evident that to recover damages for illegal conduct of the state officials, even though this conduct was the cause of adding to the length of the term of the sentence, a section 1983 case could go forward without any requirement of exhaustion." *Meadows,* 529 F.2d at 387 (Tuttle, J., dissenting).

The Supreme Court has continued to focus solely on the requested relief for distinguishing between habeas corpus and section 1983 claims. For example, in *Gerstein,* the Court allowed a section 1983 challenge of pretrial custody procedures for indicted prisoners. *Gerstein,* 420 U.S. at 107, 95 S.Ct. at 859–60, 43 L.Ed.2d at 61. The Court explicitly noted that the prisoners did not seek release from state custody, but rather only requested that the state provide them with a probable cause determination: "[b]ecause release was neither asked nor ordered, the lawsuit did not come within the class of cases for which habeas corpus is the exclusive remedy." *Gerstein,* 420 U.S. at 107 n. 6, 95 S.Ct. at 859 n. 6, 43 L.Ed.2d at 61 n. 6. Similarly, the Court has allowed a section 1983 challenge to the constitutionality of a state's parole procedures without requiring an exhaustion of state court remedies. *Greenholtz* 442 U.S. at 3, 99 S.Ct. at 2102, 60 L.Ed.2d at 673 (1979) (prisoners challenged discretionary parole procedures which did not provide a full formal hearing to all eligible prisoners). Therefore, to the extent that this court's decisions do not allow claims under section 1983 for relief which would not reduce a prisoner's confinement, such decisions impermissibly conflict with the Supreme Court's decisions.[4]

### 4. *Gwin Need Not Exhaust Even Under Our Circuit's Decisions*

Although we disagree with our circuit's binding decisions which require exhaustion of state remedies for damage claims, we cannot hold that *Preiser* and *Wolff* overrule these cases because our predecessor

---

**4.** Two other circuits interpreting *Preiser* and *Wolff* have concluded that the plaintiff's requested relief is the dispositive factor for deciding whether a claim constitutes a habeas corpus claim. *Georgevich v. Strauss,* 772 F.2d 1078, 1086–87 (3d Cir.1985), *cert. denied,* 475 U.S. 1028, 106 S.Ct. 1229, 89 L.Ed.2d 339 (1986) (challenge to parole procedures on equal protection grounds proper under section 1983 because "the fact that a prisoner's success in the litigation might increase the chance for early release does not, in itself, transform the action into one for habeas corpus. Georgevich does not ask for release on parole, but merely seeks uniform application of due process procedures to all

members of the class."); *Williams v. Ward,* 556 F.2d 1143, 1150–51 (2d Cir.), *cert. denied,* 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323 (1977) ("A petition challenging parole procedures but not demanding release or the granting of parole differs from [*Preiser* ] in an important respect...." Unlike *Preiser,* such challenge does not automatically shorten the prisoner's confinement.). These courts follow the "pure-effects" test, which focuses on the request relief in the pleadings. Under this test, a claim only constitutes a habeas corpus action if it will automatically entitle the individual to either a reduced confinement or immediate release.

court explicitly found that *Preiser* and *Wolff* did not preclude such a result. *See Fulford,* 529 F.2d at 379 ("the principle ... announced [in *Alexander* ] remains sound [after *Preiser* and *Wolff* ], at least applied to the facts of this case."). We cannot abandon *Fulford* because only the in banc court can overrule a binding decision. *United States v. Lewis,* 475 F.2d 571, 574 (5th Cir.1972).

■ Even under this narrower test, however, Gwin can bring two of his claims under section 1983 without exhausting state remedies. First, Gwin's equal protection claim challenging the denial of compassionate leave, if successful, will not lessen the duration of his sentence by one day. *See McKinnis,* 693 F.2d at 1057 (prisoners action proper under section 1983 because relief would not shorten duration of sentence by one month).

■ Second, both our predecessor court and this court have distinguished between claims challenging a denial of parole and claims attacking the parole decision process. An inmate's challenge of the specific denial of parole seeks to reduce confinement and therefore constitutes a habeas corpus claim. *See Cruz v. Skelton,* 502 F.2d 1101, 1102 (5th Cir.), *reh'g denied,* 505 F.2d 1304 (5th Cir.1974); *Watson v. Briscoe,* 554 F.2d 650 (5th Cir.1977). For example, our predecessor court concluded that a prisoner could not seek the following relief under section 1983 in a challenge to the validity of a parole decision: restoration of good-time credits, damages and declaratory relief stating that the parole proceedings violated his due process rights. *Watson,* 554 F.2d at 652. The court concluded that these claims "dealt with matters affecting the fact or length of Watson's confinement." *Watson,* 554 F.2d at 652. Thus, because Watson challenged the parole board's decision, the district court required him to exhaust state remedies.

The former Fifth Circuit distinguished such challenges from claims which challenge the validity of the parole decision procedure. *See Williams v. McCall,* 531 F.2d 1247 (5th Cir.1976), *receded from, Serio v. Members of the La. State Board*

*of Pardons,* 821 F.2d 1112 (5th Cir.1987). Williams brought a section 1983 action alleging that the Board discriminated against him by refusing to grant him a face-to-face interview while granting other similarly situated prisoners such an interview. Williams sought damages, declaratory relief and injunctive relief. The court held that Williams could proceed with his claim under section 1983:

> In *Cruz,* however, the plaintiff petitioner challenged not the validity of the parole decision procedure, but the validity of the denial of parole. In the instant case, the complaint does not seek the plaintiff's release. It merely seeks procedural amenities believed to have been arbitrarily withheld. *Preiser* does not require exhaustion in this circumstance.

*Williams,* 531 F.2d at 1248.

A nonbinding Fifth Circuit decision supports this distinction. *See Chancery Clerk of Chickasaw City v. Wallace,* 646 F.2d 151 (5th Cir. Unit A 1981). The *Wallace* court allowed a challenge to a mental institution's commitment procedures under section 1983. *Wallace,* 646 F.2d at 157. In reaching this decision, the court noted that both the Supreme Court and our predecessor court distinguished between actions to obtain release from confinement and actions challenging the constitutionality of procedures where a decision of unconstitutionality does not itself entitle the person in confinement to an earlier release:

> The Court allowed the section 1983 challenge without exhaustion of state remedies because the declaration that procedures were unconstitutional would not automatically lead to the release of those confined. This court had already made the same holding in *Williams v. McCall* ... distinguishing cases such as *Cruz v. Skelton* ... where the prisoner in the section 1983 proceeding challenged the fact that he had not been paroled.

*Wallace,* 646 F.2d at 156–57.

This court has continued to recognize this distinction. *See McKinnis v. Mosely,* 693 F.2d 1054 (11th Cir.1982) (prisoner sought damages and ancillary orders for a return to his original job assignment be-

cause the prison allegedly punished him prior to his disciplinary hearing). In *McKinnis,* this court allowed the section 1983 action because the prisoner did not seek to reduce the duration of his sentence but rather only sought money damages. The court stated, "[e]ven if McKinnis prevails on all of his claims and receives all the relief he demands, the duration of his sentence will not be shortened by one moment. The fact that he seeks equitable relief in addition to damages does not change this result...." *McKinnis,* 693 F.2d at 1057.

■ Gwin's equal protection claim challenges the Board's procedure and the Board's denial of parole. Initially, we note that Gwin challenges his denial of parole. Gwin alleges that the Board denied his parole for racially discriminatory reasons. To the extent Gwin seeks an earlier release or a damage award for this denial, such claims require exhaustion of state remedies under this court's binding precedent. *See Cruz,* 502 F.2d at 1102; *Meadows,* 529 F.2d at 386.

Following our rule of liberally interpreting *pro se* complaints, however, we can also fairly construe Gwin's complaint as requesting a change in the Board's procedure so that he will receive a fair parole decision in the future.[5] Gwin's equal protection claim specifically states: "Plaintiff's clear statement of claim is his guaranteed equal protection of the law right to

have parole decisions made fairly and especially free from racial discrimination in those decisions." Because Gwin challenges the Board's procedure of allegedly considering race as a factor in its parole decisions, he can properly bring his claim under section 1983 because a declaration of unconstitutionality of such procedures would not automatically lead to his release.[6] Therefore, the district court improperly dismissed Gwin's equal protection claims on the ground that Gwin had not exhausted state remedies.

### B. Refusal to Adopt the Fifth Circuit's "Bright–Line" Test

To remedy any uncertainty in this area, the Board urges this court to adopt the Fifth Circuit's "bright-line" test announced in *Serio v. Members of the La. State Board of Pardons,* 821 F.2d 1112 (5th Cir. 1987). In *Serio,* the Fifth Circuit adopted the following rule: "If a prisoner challenges a single hearing as constitutionally defective, he must first exhaust habeas remedies." *Serio,* 821 F.2d at 1118. Although the bright-line test's simplicity and certainty has an initial appeal, we expressly decline to adopt the bright-line test for two reasons: (1) we find that the rule's harm outweighs its benefits, and (2) we believe that the bright-line test conflicts with the Supreme Court's decisions in *Preiser* and *Wolff.*

The Fifth Circuit adopted the bright-line test to alleviate the district court's difficul-

---

**5.** Gwin's complaint reads:

Plaintiff, a black prisoner and a member of a protected class is serving a life sentence for armed-robbery and aggravated assault. Plaintiff is not challenging the fact or duration of his confinement. Plaintiff alleges he has been denied parole for racially and economically discriminating reasons, in particular because his victim was white. The Board's records/files will substantiate plaintiff's allegation that a black man's crime is considered more severe than a white man's crime, even though the offense may be the same or the nature of the offense carries the same severity rating. Plaintiff alleges the race of a criminal's victim may not be considered as a factor in evaluating the seriousness of the crime. Defendants openly practice victim discrimination.

.    .    .    .    .

Plaintiff acknowledges that parole is a privilege and not a right. Plaintiff's clear statement of claim is his guaranteed equal protection of the law right to have parole decisions made fairly and especially free from racial discrimination in those decisions. All equal protection claims herein is of constitutional magnitude.

**6.** The Second Circuit and Third Circuit have held that challenges to parole decision procedures are proper claims under section 1983. *Georgevich,* 772 F.2d at 1086–87 (equal protection claim attacking parole procedures proper under section 1983 because such claim challenges "the manner by which prison authorities reach their decision and not the *outcome* of the decision"); *Williams,* 556 F.2d at 1150–51 (challenge to parole procedures not demanding release or granting of parole proper under section 1983 even though improves chances for parole).

ty in determining whether a claim necessarily constitutes a habeas corpus claim. In *Serio*, the court stated:

> While some challenges to a single hearing might, if successful, entitle the prisoner only to a new hearing with proper procedural protections instead of making him eligible for or entitling him to accelerated release, it is difficult to determine from the usual petition not only precisely what relief is sought but also what would be the result of that relief.

*Serio*, 821 F.2d at 1118. This rule fails to address whether the claim is properly a section 1983 or a habeas corpus claim. Thus, even if a prisoner validly challenges a procedural aspect of a hearing under section 1983, the court will require exhaustion of state remedies. We cannot condone such an artificial distinction, especially when it serves only to eliminate the district court's obligation to determine the precise relief that the plaintiff is seeking.

The rule has other problems. Initially, the rule violates the well-established principle of allowing an individual's pleading to control the cause of action. The bright-line test makes the individual section 1983 complainant the only plaintiff who cannot freely choose between valid causes of action. Furthermore, the rule does not serve its purpose. Individuals can circumvent the "bright-line" test by simply amending the complaint to challenge more than a single proceeding or seeking class certification to convert an otherwise proper section 1983 claim into a valid section 1983 cause of action under the bright-line test.

Moreover, a less intrusive and more complete method exists to alleviate the district courts' difficulty in determining the specific relief which a prisoner seeks. In ambiguous cases, the district court could request clarification from the plaintiff by soliciting responses to precise questions. This mechanism would ease the courts' burden as effectively as the bright-line test without intruding upon the individual's right to choose between possible valid causes of action.

Beyond these problems, the "bright-line" test conflicts with the Supreme Court's decisions in *Preiser* and *Wolff*. In *Preiser* and *Wolff*, the Supreme Court articulated the method for distinguishing between section 1983 and habeas corpus claims; as discussed above, the plaintiff's requested relief controls this distinction. Moreover, in *Wolff*, the Supreme Court adopted the approach of dividing the cases based on the requested relief and allowing claims to proceed as unexhausted section 1983 causes of action when such relief does not accelerate the prisoner's release. The bright-line test, instead, focuses on whether the claim challenges a general rule or a procedure used in a single hearing. Focusing on the conduct challenged rather than the relief sought conflicts with *Wolff* because it requires exhaustion of state remedies for all "narrow" challenges to a single hearing even when the prisoner does not request, and is not entitled, to an earlier release from confinement. Even the *Serio* court acknowledges this outcome. *Serio*, 821 F.2d at 1118 (recognizing that some challenges to a single hearing do not entitle the prisoner to an accelerated release).

Furthermore, the Court never suggests that a court may universally treat challenges to a single hearing differently than broad based class action challenges. Admittedly, both *Preiser* and *Wolff* involved class actions asserting broad-based attacks of a prisoner's disciplinary procedures. The Court, however, never indicated or even implied that such a factor was a criterion for its decision. Thus, because the bright-line test dismisses proper section 1983 claims for failure to exhaust state remedies, it ventures impermissibly beyond *Preiser* and *Wolff*. Consequently, we decline to adopt the bright-line test to distinguish between claims which require exhaustion and those that do not.

### C. The Eleventh Circuit Rule

We are left with the rule that if the relief requested under section 1983 would undermine the conviction, the district court must treat the claim as a habeas corpus claim. Because our discussion above demonstrates that our court classifies proper section 1983 claims as habeas corpus claims, this rule

conflicts with the Supreme Court precedent holding that a section 1983 claim does not require the exhaustion of state remedies. *Patsy v. Florida Board of Regents*, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed. 2d 172, 188 (1982) (reaffirming longstanding rule that exhaustion of state remedies not required for a section 1983 action); *Steffel v. Thompson*, 415 U.S. 452, 472–73, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505 (1974) ("when federal claims are premised on [section 1983] ... we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights."). This panel cannot overrule our circuit's binding precedent because we lack the power as a panel to change this rule of law. Thus, we must accept this rule despite its conflict with Supreme Court precedent until our in banc court visits the issue.

## II. *Due Process Claims*

Gwin asserts various other contentions, challenging the district court's dismissal of his due process claims. Because we find that such contentions have no merit, we summarily reject them and affirm the district court's dismissal of all remaining claims.

## CONCLUSION

To the extent we construe Gwin's equal protection claim as challenging the Board's procedures, we reverse the district court's dismissal of such claim. We also reverse the district court's dismissal of Gwin's equal protection challenge to his denial of compassionate leave. In addition, we reverse the district court's denial of appointment of counsel to Gwin. We remand this case to the district court with direction that it appoint a lawyer for Gwin and allow him to amend the complaint. Finally, we affirm the district court's dismissal of all other claims.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.