John Stephan PARISIE

v.

James T. MORRIS, Chairman of Georgia State Bd. of Pardons and Paroles; J. Wayne Garner, Bettye O. Hutchings, and Bobby K. Whitworth, members of Georgia State Bd. of Pardons and Paroles; Michael P. Sullivan, Parole Decision Guidelines employee; and Michael J. Bowers, Attorney General, State of Georgia.

No. 1:94–CV–1476–RCF.

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 18, 1995.

John Stephan Parisie, pro se.

Daryl Alan Robinson and Neal Bradley Childers, Office of State Atty. Gen., Atlanta, for defendants.

### ORDER

RICHARD C. FREEMAN, Senior District Judge.

This action is before the court on the separate motions to dismiss of defendant Michael J. Bowers [# 3–1], and defendants James T. Morris, J. Wayne Garner, Bettye O. Hutchings, Timothy E. Jones, Bobby K. Whitworth, and Michael P. Sullivan [# 6–1]. Plaintiff opposes these motions. Also before the court is plaintiff John Stephan Parisie's motion for leave to amend his complaint [# 9–1], which motion is unopposed.[1]

**Background**

Plaintiff, an inmate presently incarcerated at Ware Correctional Institution in Waycross, Georgia, proceeds *pro se* and *in forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983 [section 1983]. Plaintiff alleges that defendants, all of whom are members of the Georgia State Board of Pardons and Paroles [the Board] except for defendant Bowers, departed from the Parole Decision Guidelines in setting plaintiff's tentative release date, thereby violating plaintiff's constitutional rights of due process and equal protection. According to plaintiff, the guidelines provide that an inmate with plaintiff's parole success likelihood score and crime severity level should serve 25 months, but the Board tentatively decided that plaintiff would serve his full sentence of 180 months. *See* Exhibits A and B to Complaint. Plaintiff further contends that defendants' departure from the guidelines was improperly based upon his ethnicity. Specifically, plaintiff alleges that defendants' decision was

---

1. Failure to file a response shall indicate that there is no opposition to the motion. LR 220–1(b), NDGa.

based at least in part upon their assumption that plaintiff had connections to organized crime because plaintiff is Italian–American. Plaintiff seeks declaratory and injunctive relief and compensatory damages.

## Plaintiff's Motion for Leave to Amend

Plaintiff seeks leave to amend his complaint and attaches a proposed amended complaint in which he clarifies his claims. Under Fed.R.Civ.P. 15(a), leave to amend a complaint "shall be freely given when justice so requires." In light of Rule 15(a)'s policy of "liberally permitting amendments to facilitate determination of claims on the merits," the Eleventh Circuit has instructed that a district court should grant leave to amend "unless a substantial reason exists" to deny it. *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 406 (11th Cir.1989). There being no opposition or other reason to deny plaintiff's motion, the court will permit the amendment.

## Standard for Ruling Upon a Motion to Dismiss

■ In evaluating the sufficiency of a complaint, the court must accept the facts as pleaded and construe them in the light most favorable to the plaintiff. *Parr v. Woodmen of World Life Insurance Co.*, 791 F.2d 888, 889–90 (11th Cir.1986). The standard the court must use in ruling on a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is well-established. The Eleventh Circuit has instructed that such motions "should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims." *Bracewell v. Nicholson Air Services, Inc.*, 680 F.2d 103, 104 (11th Cir.1982); *see also Quality Foods de Centro America, S.A. v. Latin America Agribusiness Development Corp. S.A.*, 711 F.2d 989, 995 (11th Cir.1983) (plaintiffs' "threshold of sufficiency ... is exceedingly low"). Accordingly, the "movant sustains a very high burden." *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir.1986). The court is also mindful of its obligation to construe the complaints of *pro se* litigants liberally. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594,

30 L.Ed.2d 652 (1972); *Thomas v. Georgia State Board of Pardons and Paroles*, 881 F.2d 1032, 1033 (11th Cir.1989).

## Defendant Bowers' Motion to Dismiss

■ Defendant Bowers has moved to dismiss plaintiff's claims against him, *inter alia,* for failure to state a claim upon which relief may be granted. Neither the original complaint nor the amended complaint contains any direct allegations against defendant Bowers; therefore, liability against him must be predicated upon *respondeat superior.* As defendant Bowers correctly points out, a section 1983 claim cannot be based upon vicarious liability. *Brown v. Smith*, 813 F.2d 1187 (11th Cir.1987). Therefore, defendant Bowers' motion is granted, and he is dismissed from this action.

## Remaining Defendants' Motion to Dismiss

The remaining defendants move to dismiss plaintiff's complaint on a variety of grounds, some of which apply only to specific defendants or claims and some of which are generally applicable. The court will consider each ground in turn.

1. *Failure to State a Valid Due Process Claim*

■ Defendants contend that the complaint fails to state a valid due process claim. The Eleventh Circuit recently held in *Sultenfuss v. Snow*, 35 F.3d 1494 (11th Cir.1994) (*en banc*), that prisoners have no legitimate expectation of, and therefore no liberty interest in, receiving parole. As a result, defendants' failure to set plaintiff's release date in accordance with the guidelines, if true, does not give rise to a due process claim.[2] Plaintiff's due process claim is therefore dismissed.

■ Defendants do not argue that plaintiff fails to state a valid equal protection claim. Therefore, plaintiff's equal protection claim remains. *See Osborne v. Folmar*, 735 F.2d 1316, 1317 (11th Cir.1984) ("[A] person may challenge a pardon or parole decision on

2. Plaintiff concedes as much in his Second Response to Defendants' Second Citation of Supplemental Authority in Support of Motion to Dismiss Plaintiff's Complaint, at 1.

equal protection grounds though he asserts a due process claim that fails."). To establish an equal protection violation, plaintiff must show (1) that he is similarly situated with other prisoners (*e.g.*, prisoners who had the same parole success likelihood scores and crime severity levels) who were given earlier tentative release dates; and (2) defendants have engaged in invidious discrimination against him based upon his membership in a constitutionally protected class (*e.g.*, ethnicity). *Damiano v. Florida Parole and Probation Comm'n.*, 785 F.2d 929, 932–33 (11th Cir.1986).

## 2. *Failure to State a Valid Claim Against Defendant Sullivan*

■ Defendants argue that plaintiff's allegations against defendant Sullivan, who is the Director of Parole Decision Guidelines, "amount to nothing more than a claim that he is vicariously liable for the acts of members of [the Board]." Motion to Dismiss Plaintiff's Complaint on Behalf of Defendants Morris, Garner, Hutchings, Jones, Whitworth, and Sullivan [Second Motion to Dismiss], at 4. Defendants state that Georgia law does not empower defendant Sullivan to make parole decisions. Accordingly, defendants urge that the complaint be dismissed as to defendant Sullivan because vicarious liability is not available under section 1983.

However, the complaint may fairly be read as stating allegations *directly* against defendant Sullivan. Plaintiff alleges that, upon discovering that the Board had incorrectly calculated his parole success likelihood factor, plaintiff wrote to defendant Sullivan and informed him of the error. Complaint, § III; Amended Complaint, at 9–10. Plaintiff further alleges that he received a letter from defendant Sullivan stating that the Board would not reconsider plaintiff's case. Exhibit C to Complaint. In that letter, defendant Sullivan purported to write "on behalf of the Board" and explained the reasoning behind the Board's decision, noting that "*we* do attribute" certain prior crimes to plaintiff. *Id.* (emphasis added). Thus, even if the decisionmaking body under Georgia law is the Board and not defendant Sullivan, the language of the letter may indicate some partic-

ipation by defendant Sullivan in the acts of which plaintiff complains. Dismissal of defendant Sullivan at this stage in the proceedings would therefore be improper.

## 3. *Failure to Exhaust State Remedies*

■ Defendants argue that, because the relief plaintiff is seeking would effectively shorten the period of his confinement, plaintiff's claim must be treated as a petition for habeas corpus and, accordingly, must be dismissed because plaintiff has failed to exhaust his state remedies. Plaintiff does not dispute that he has not exhausted his state remedies. However, he argues that he "does not seek his release from confinement, only an equalization of the *process* for making parole decisions—the challenge is to the *process*, not the results of any parole determination." Plaintiff's Response to Defendants' Motion to Dismiss Plaintiff's Complaint, at 19. Accordingly, plaintiff contends that his claims are cognizable under section 1983 and are not subject to an exhaustion requirement.

It is well-settled that habeas corpus petitioners must exhaust their state remedies before proceeding to federal court, *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), but section 1983 plaintiffs face no such requirement. *Patsy v. Florida Board of Regents*, 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982). It is less clear, however, which claims a prisoner may properly bring under section 1983 and which must be pursued via habeas corpus.

The United States Supreme Court has attempted to demarcate the boundary between section 1983 and habeas corpus on several occasions. In *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the Court's first serious examination of the issue, three state inmates alleged that prison officials had unconstitutionally deprived them of good-time credits via unfair disciplinary proceedings. The inmates sought injunctive relief to compel restoration of the credits, which would "result in their immediate release from confinement in prison." *Id.* at 475, 93 S.Ct. at 1829. The Court reasoned that the remedy the inmates sought—release from prison—was the precise remedy that the instrument of habeas corpus was tradi-

tionally intended to provide. Accordingly, a prisoner's exclusive remedy must be habeas corpus

> in the case of a state prisoner's challenge to the *fact or duration* of his confinement, based, as here, upon the alleged unconstitutionality of a state administrative action. Such a challenge is just as close to the core of habeas corpus as an attack on the prisoner's conviction, for it goes directly to the constitutionality of his physical confinement itself and *seeks either immediate release or the shortening of its duration.*

*Id.* at 488, 93 S.Ct. at 1836 (emphasis added). The Court thus held that the inmates' claims for injunctive relief were not cognizable under section 1983. The *Preiser* test for determining whether a section 1983 claim is in reality masquerading as a habeas corpus claim, then, centers upon whether the relief a plaintiff seeks is "a determination that he is entitled to immediate release or a speedier release from [ ] imprisonment." *Id.* at 498, 93 S.Ct. at 1841.

The *Preiser* Court noted in dicta that, had the inmates sought damages, that claim would have been proper under section 1983 because "if a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release—the traditional purpose of habeas corpus." *Id.* at 492, 93 S.Ct. at 1838.[3] The Court confronted this issue directly one year later in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Wolff,* as in *Preiser,* a group of state inmates brought a section 1983 action seeking damages and declarative and injunctive relief for the deprivation of their good-time credits by prison officials. The Court, following *Preiser,* concluded that the claim for an injunction to restore good-time credits could not be pursued under section 1983 because that claim directly sought to shorten the period of the inmates' confinement. However, the Court held that the claims for damages and declaratory relief were proper:

> [The inmates'] damages claim was therefore properly before the District Court and required determination of the validity of the procedures employed for imposing sanctions, including loss of good time, for flagrant or serious misconduct. Such a declaratory judgment as a predicate to a damages award would not be barred by *Preiser* ... [I]t was proper for ... the District Court to determine the validity of the procedures for revoking good-time credits and to fashion appropriate remedies for any constitutional violations ascertained, short of ordering the actual restoration of good time already canceled.

*Id.* 418 U.S. at 554, 94 S.Ct. at 2974. The Court did not, however, explain whether its decision was based upon a conclusion that claims for damages, by their nature, *never* amount to challenges to the fact or duration of confinement, as the *Preiser* Court suggested in dicta; or whether the *Wolff* decision rested more narrowly upon a determination that the damages claim in *that* case did not present a challenge to the fact or duration of the inmates' confinement.

The Supreme Court distinguished *Wolff* in the recent case of *Heck v. Humphrey,* —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and explained that a claim for damages *can* involve a challenge to the fact or duration of confinement. Defendants in this case rely heavily upon *Heck* to support their contention that plaintiff must exhaust his state remedies. *See* Citation of Supplemental Authority in Support of Defendants' Motion to Dismiss Plaintiff's Complaint. However, this court concludes that *Heck*'s holding is inapplicable in this case.

In *Heck,* the Court held that, "when establishing the basis for [a prisoner's] damages claim necessarily demonstrates the invalidity of the conviction," the claim must be treated as a habeas corpus claim, and exhaustion is required. *Id.* at ——, 114 S.Ct. at 2369. *Heck* involved the section 1983 claim of an inmate who sought damages, but no other relief, for allegedly unconstitutional acts that occurred during the investigation and trial of

---

**3.** The Court was responding to the inmates' argument that confining them to habeas corpus might deprive them of a damages remedy. (This was,

of course, a hypothetical argument, since the inmates did not seek damages.)

his criminal case, including the knowing destruction of exculpatory evidence and the use of unlawful voice identification procedures. The inmate essentially conceded that these claims were challenges to the legality of his conviction, so that particular factual issue was not before the Court. *See id.* at —— — —— n. 2, 114 S.Ct. at 2368–69 n. 2. Thus, the holding of *Heck* is actually rather narrow: when a prisoner's claim *amounts to* a challenge to the legality of his or her conviction or confinement, then the claim must be brought as a habeas corpus claim, regardless of the nature of the remedy the prisoner seeks. *Heck*'s teaching is that a prisoner's claim should be considered a challenge to the fact or duration of his or her confinement not only when a judgment in favor of the prisoner would automatically result in a shorter period of confinement, but also when a judgment for the prisoner would *practically* invalidate his or her conviction or sentence.[4]

The question in the instant case, then, is whether plaintiff's claims are attacks upon the fact or duration of his confinement. If they are, then they must be brought as habeas corpus claims, and plaintiff must first exhaust his state remedies. If they are not, then plaintiff may proceed under section 1983. *Heck*, unfortunately, provides little guidance along these lines because, as noted, the *Heck* Court assumed that the damages claim of the plaintiff in that case, if successful, would invalidate his conviction. Plaintiff clearly does not attack his conviction in this action.

Plaintiff contends that he is challenging the *process* employed by the parole board members rather than the *result* they reached, so that a decision in his favor would not necessarily invalidate his confinement. The distinction plaintiff draws is well supported by precedent. The former Fifth and Eleventh Circuits "have distinguished between claims challenging a denial of parole and claims attacking the parole decision process." *Gwin v. Snow*, 870 F.2d 616, 624 (11th Cir.1989). Claims challenging a specific parole decision have been interpreted as attacks on a prisoner's confinement and, accordingly, have not been cognizable under section 1983. For example, the former Fifth Circuit held that habeas corpus was the proper remedy in the case of a prisoner who sought a declaratory judgment that he was entitled to parole and money damages for the parole board's refusal to grant him parole. The court reasoned that "the relief sought by [plaintiff] was release from confinement." *Cruz v. Skelton*, 502 F.2d 1101, 1102 (5th Cir.1974).[5] *See also Watson v. Briscoe*, 554 F.2d 650 (5th Cir.1977).

However, claims attacking the parole decision *process* have not been construed as attacks on a prisoner's confinement and have therefore been permitted to proceed under section 1983. In *Williams v. McCall*, 531 F.2d 1247 (5th Cir.1976), *receded from*, *Serio v. Members of the La. State Board of Pardons*, 821 F.2d 1112 (5th Cir.1987), the former Fifth Circuit held that a prisoner's equal protection claim that he was denied a face-to-face interview by the parole board was properly brought under section 1983. The court reasoned that "the complaint does not seek the plaintiff's release[; i]t merely seeks procedural amenities believed to have been arbitrarily withheld." *Id.* 531 F.2d at 1248. The court distinguished *Cruz, supra,* as a case in which the plaintiff "challenged not the validi-

---

**4.** As Justice Souter's concurring opinion in *Heck* puts it:

> Though in contrast to *Preiser* the state prisoner here seeks damages, not release from custody, the distinction makes no difference when the damages sought are for unconstitutional conviction or confinement.... [M]ounting damages against the defendant-officials for unlawful confinement (damages almost certainly to be paid by state indemnification) would, practically, compel the state to release the prisoner. —— U.S. at ——, 114 S.Ct. at 2378. In other words, if the essential elements of a prisoner's section 1983 damages claim could form the basis for a habeas petition, with the addition of little or

nothing more, then the prisoner's exclusive remedy must be habeas corpus. This rule prevents prisoners from bypassing the habeas exhaustion requirement by challenging the basis of their conviction or confinement in federal court via a suit for section 1983 damages, then waving the damage award in state court and receiving a nearly-automatic writ of habeas corpus.

**5.** All decisions of the former Fifth Circuit decided prior to October 1, 1981 are binding precedent for the Eleventh Circuit. *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

ty of the parole decision procedure, but the validity of the denial of parole." *Id.*

Similarly, in *Gwin, supra*, the Eleventh Circuit construed a section 1983 plaintiff's equal protection claim to be a challenge to the parole decision process, and thus refused to dismiss it for failure to exhaust state remedies. The plaintiff in *Gwin* alleged, *inter alia*, that the parole board had violated his right to equal protection by considering both his race and the race of his victim in making its decisions. First, the court noted that "[t]o the extent Gwin seeks an earlier release or a damage award for [the denial of his parole], such claims require exhaustion of state remedies under this court's binding precedent." *Id.* 870 F.2d at 625. The court went on, however, to state that "we can also fairly construe Gwin's complaint as requesting a change in the Board's procedure so that he will receive a fair parole decision in the future." *Id.* This claim for prospective injunctive relief could properly be brought under section 1983 "because a declaration of unconstitutionality of [racially discriminatory] procedures would not automatically lead to [Gwin's] release."[6] *Id. See also Prather v. Norman*, 901 F.2d 915, 917 n. 1 (11th Cir.1990) ("The *Gwin* court was careful to distinguish procedural rights that may ultimately result in a shorter sentence from substantive attacks on the conviction."); *Georgevich v. Strauss*, 772 F.2d 1078, 1086–87 (3d Cir.1985), *cert. denied*, 475 U.S. 1028, 106 S.Ct. 1229, 89 L.Ed.2d 339 (1986) (prisoner's equal protection claim challenging parole decision procedures was cognizable under section 1983 because it attacked "the manner by which prison authorities reach their decision and not the *outcome* of the decision.").

In *Heck, supra*, the Supreme Court endorsed the process/result distinction. The *Heck* Court stated that its earlier opinion in *Wolff, supra*, was correct because *Wolff* "recognized a § 1983 claim for using the wrong procedures, not for reaching the wrong result ... Thus, the claim at issue in *Wolff* did *not*

call into question the lawfulness of the plaintiff's continuing confinement." —— U.S. at ——, 114 S.Ct. at 2370. The Court noted that the plaintiff in *Wolff* sought damages "for the deprivation of civil rights resulting from the use of the allegedly unconstitutional procedures." *Id. (citing Wolff,* 418 U.S. at 552, 94 S.Ct. at 2973). The *Heck* Court interpreted this claim as a prayer for damages flowing not from the actual loss of good-time credits, but from the prison officials' use of unconstitutional procedures. The Court further noted that there was no indication in the *Wolff* opinion "or any reason to believe, that using the wrong procedures necessarily vitiated the denial of good-time credits." *Id.* Thus, the Court reaffirmed that a section 1983 plaintiff may seek damages or any other appropriate relief in a challenge to the use of allegedly unconstitutional *procedures* that resulted in the fact of his or her confinement or extended the period of that confinement.

In light of these principles, the court finds that the instant plaintiff's claims are cognizable under section 1983. The crux of plaintiff's complaint is that defendants violated his equal protection rights by impermissibly considering his ethnicity in making parole decisions. Plaintiff seeks declaratory and injunctive relief (including prospective injunctive relief) and compensatory damages. *See* Amended Complaint, at 12–13. Adjudication of plaintiff's claims will not *necessarily* require a shortening of plaintiff's period of confinement. If plaintiff prevails on his claims for equitable relief, he will receive a new parole determination made without regard to his ethnicity. The result *could* be precisely the same as his present tentative release date. If plaintiff receives damages, those damages will be based not upon the incorrectness of the result reached by the Board, but upon the tainted procedures used to reach that result. In short, a judgment in favor of plaintiff would not have the result of shortening his stay in prison (although this may be the ultimate effect), and the determi-

6. The court also refused to dismiss the plaintiff's claim that the parole board had discriminatorily refused to grant him a compassionate leave when his mother died because that claim, "if successful, will not lessen the duration of his sentence by one day." *Id.* 870 F.2d at 624 (*citing McKinnis*

*v. Mosely,* 693 F.2d 1054, 1057 (11th Cir.1982)). This exclusive focus on whether the requested relief will automatically result in a shorter period of confinement has been discounted by the Supreme Court's decision in *Heck. See* discussion *supra,* pp. 1564–1565 and n. 4.

nation of his claims would not call into question the *outcome* reached by the Board in his case. The court therefore finds that plaintiff may pursue his claims under section 1983, and that he is not required to exhaust his state remedies.

### 4. *Quasi–Judicial Immunity of Defendant Morris*

■ Defendants contend that defendant Morris, who is the Chairman of the Board of Pardons and Paroles, is immune from suits for damages. Defendants point out that members of the Board are performing a quasi-judicial function when considering prisoners for parole and are therefore entitled to quasi-judicial immunity from suits requesting damages. *Sultenfuss v. Snow*, 894 F.2d 1277, 1279 (11th Cir.1990); *Fuller v. Georgia State Board of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir.1988). The court agrees, and therefore dismisses plaintiff's claim for compensatory damages against defendant Morris.[7]

### 5. *Qualified Immunity of Defendants Morris and Sullivan*

■ Defendants argue that defendants Morris and Sullivan are entitled to qualified immunity because the conduct alleged by plaintiff, if true, does not constitute a violation of clearly established law. The doctrine of qualified immunity shields government officials from civil damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A government official is entitled to assert the protection of qualified immunity if "in light of the information known to [the official] and pre-existing law, [the official] could have believed [the challenged] conduct lawful." *Harris v. Coweta County*, 21 F.3d 388, 390 (11th Cir.1994) (citing *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987)).

Applying these principles to the instant case, the doctrine of qualified immunity does not shield defendants Morris and Sullivan from liability for plaintiff's equal protection claim. This circuit has long recognized that, when making a parole decision, members of a parole board may not engage in "invidious discrimination ... based on race, religion, national origin, poverty, or some other constitutionally protected interest." *Damiano v. Florida Parole and Probation Commission*, 785 F.2d 929, 932–33 (11th Cir.1986); *see also Osborne v. Folmar*, 735 F.2d 1316 (11th Cir.1984); *Cruz v. Skelton*, 543 F.2d 86 (5th Cir.1976), *cert. denied*, 433 U.S. 911, 97 S.Ct. 2980, 53 L.Ed.2d 1096 (1977). Thus, if plaintiff's allegations are true, defendants *did* cross a "bright line" and violate clearly established law.

### Conclusion

Accordingly, plaintiff's motion for leave to amend his complaint [# 9–1] is GRANTED. The Clerk is DIRECTED to ACCEPT for filing plaintiff's amended complaint [attached at # 9–1] and to docket the same as though filed as of the date of filing of the instant Order. Defendant Michael J. Bowers' motion to dismiss [# 3–1] is GRANTED. The motion to dismiss of defendants James T. Morris, J. Wayne Garner, Bettye O. Hutchings, Timothy E. Jones, Bobby K. Whitworth, and Michael P. Sullivan [# 6–1] is GRANTED IN PART AND DENIED IN PART, as indicated in the body of this Order.

SO ORDERED.

---

**7.** Plaintiff also seeks compensatory damages from defendants Sullivan and Hutchings, but defendants have not argued that these defendants are entitled to quasi-judicial immunity. Therefore, the damages claims against them remain viable at present.