900 F.2d 1305
 Rick Dean BRESSMAN, Appellant,
v.
Hal FARRIER, et al., Appellees.
George GOFF, Appellee,
v.
Crispus NIX; Harold Farrier; Deputy Warden Henry;
Correctional Officer Spangler; Correctional Officer Rooney;
Correctional Officer Marshall; Correctional Officer
Severin; Correctional Officer Drummond; Correctional
Officer Stevens; Correctional Officer Fields; Correctional
Officer Dilks, Appellants.
George GOFF, Appellee,
v.
Steve DAILEY, Superintendent of Clarinda; Correctional
Officer Huskins, Appellant.
Laurence BURGIN, Appellee,
v.
Hal FARRIER; Paul Grossheim; Crispus Nix; Ron Welder;
Charles Harper; Marion Ware; John Sanders; Randall
Martain; R.W. McVeigh; John Lewis; A.K. Anderson;
Richard McAllon; Neal Breding; Captain Bridle; J.R.
Goetz; Gerald Dolf; George Finn; Lt. Mitchell; Paul
Schrock; John Dewey; Richard Larkin; George Clymax; Rick
Barlow; Donell Prough; Lt. Birdsell; Steve Young; Kevin
Selton; Lt. Barnard; Lt. Crowell; James Rennea; Ray
Olson; Pat McLaughlin; Bob Washington, Appellants.
Ronald W. BREWER and James Whited, Jr., Appellees,
v.
John HENRY; Sarah Coats; James Burton (Captain), Appellants.
Ronald A. MAHERS, Appellee,
v.
Crispus C. NIX; Charles Harper; Ken Wittry; Ronald G.
Welder; Paul Grossheim, Appellants.
Charles O. REESE, Appellees,
v.
Hal FARRIER; C.C. Nix, Warden; Hedgepeth; John Henry;
Ron G. Welder; Charles Harper, Appellants.
Chester WALTON, Jr., Appellee,
v.
Crispus C. NIX; Charles Harper; Lieutenant Ship; Ronald
G. Welder, Appellants.
 Nos. 89-1186, 89-1187.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 13, 1988.
Decided April 19, 1990.
Rehearing and Rehearing En Banc Denied May 30, 1990.
 
 Philip B. Mears, Iowa City, Iowa, for appellants.
 Layne M. Lindebak, Des Moines, Iowa, for appellees.
 Before HEANEY,* BOWMAN, and MAGILL, Circuit Judges.
 BOWMAN, Circuit Judge.
 
 
 1
 These consolidated appeals draw us once more into that ambiguous borderland between habeas corpus actions and suits brought by state prisoners under 42 U.S.C. Sec. 1983, which we first explored in Offet v. Solem, 823 F.2d 1256, 1257 (8th Cir.1987). In Offet, we held that under Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), the appropriate vehicle for a state prisoner who is directly attacking the length of his confinement and seeking restoration of his good-time credits is a petition for writ of habeas corpus, which requires exhaustion of state remedies before coming into federal court. Offet, 823 F.2d at 1257. In addition to seeking restoration of his good-time credits, however, Offet requested declaratory relief and damages. Nevertheless, we recognized that a federal ruling in favor of Offet on the constitutional issue underlying his section 1983 claim for declaratory relief and damages would effectively establish an irrefutable claim for early or immediate release under habeas, and thereby preclude state consideration of the same issue in a subsequent state proceeding. Id. at 1258. Accordingly, we concluded the same comity which required the district court to stay Offet's section 1983 claim for restoration of his good-time credits pending exhaustion of his state remedies, also required the court to stay his claim for declaratory relief and damages. Id. at 1259.
 
 
 2
 In each of the cases now before us, one or more inmates in the Iowa prison system seek relief in federal court under 42 U.S.C. Sec. 1983 from prison discipline that allegedly violated their constitutional rights. After our decision in Offet, the state moved to dismiss or stay further proceedings until the inmates exhausted their state remedies under Iowa Code Sec. 663A.2(6) (1987), which sets forth the procedures by which prisoners can challenge the forfeiture of good-time credits in state court. A stay was granted in the case of Bressman v. Farrier, No. 89-1186.[1] The remaining cases were consolidated, No. 89-1187, and the motions for stay were denied on May 6, 1988.[2] We granted the petitions for interlocutory appeal filed by plaintiff Bressman and by the state.
 
 A. Suits Not Subject to Offet
 Brewer v. Henry
 Whited v. Nix
 
 3
 Ronald Brewer's section 1983 complaint challenges the constitutionality of his lengthy confinement in predisciplinary investigative lock-up. Because summary placement in investigative lock-up does not entail a loss of good-time credits, a finding that the prison had acted unconstitutionally would not affect the length of Brewer's confinement, and the rationale of Offet is inapplicable. Accordingly, we affirm the denial of the motion to stay, and remand for further proceedings.
 
 
 4
 James Whited was placed in investigative lock-up at the same time as Brewer and filed a similar complaint. Noting the similarity between the complaints, the district court joined the two cases under the same district court number. Although the district court's order denying the motion to stay refers only to Brewer it appears the state and Whited believe the order also applies to him. We remand for clarification of the district court's order in light of our disposition of Brewer v. Henry.
 
 Goff v. Dailey
 
 5
 George Goff's complaint alleges the prison disciplined him in retaliation for exercising his First Amendment rights. Although Goff's discipline included forfeiture of sixteen days of good-time credits, the prison suspended imposition of the sanctions. Because Goff thus did not forfeit any good-time credits, a federal determination on the merits of his claim would not affect the length of his confinement, and Offet does not apply. Accordingly, we affirm the denial of the motion to stay, and remand for further proceedings.
 
 B. Suits Subject to Offet
 Bressman v. Farrier
 
 6
 Rick Bressman's section 1983 action seeks damages and the restoration of good-time credits that he lost as the result of a disciplinary action. Bressman alleges the prison violated his constitutional rights by disciplining him for the contents of a letter he wrote to his brother. Because a federal determination on the merits of this claim would affect the length of Bressman's confinement, the district court was correct in staying Bressman's claim. Furthermore, we do not believe Bressman's subsequent attempt to omit his request for restoration of good-time credits warrants a different result. As we noted in Offet, "the question of whether exhaustion should be required should not be determined solely by reference to the relief the plaintiff requests." Offet, 823 F.2d at 1258.
 
 
 7
 Bressman also alleges his rights were violated when the prison, in contravention of prison regulations, failed to notify his brother that it had intercepted and confiscated the letter sent to him by Bressman. Because this claim does not involve the deprivation of good-time credits, the district court correctly denied the stay as to this claim, and we affirm.
 
 Goff v. Nix
 
 8
 George Goff's section 1983 claim seeks a declaration that disciplinary action, resulting in the forfeiture of good-time credits and disciplinary segregation, violated his constitutional rights. Goff did not challenge his discipline in state court as provided by Iowa Code Sec. 663A.2(6), and as the district court noted, the three-year statute of limitations for bringing any state action relating to the discipline expired prior to our decision in Offet. The district court ended its analysis at this point and denied the motion to stay on the ground that any subsequent state action would be futile given the statute of limitations. Nevertheless, we believe the important principles of federalism underlying the exhaustion requirement, see Fay v. Noia, 372 U.S. 391, 433, 83 S.Ct. 822, 846, 9 L.Ed.2d 837 (1963), require the district court to dismiss Goff's federal claim unless he can establish cause for his failure to seek state relief in a timely manner. Accordingly, we remand for further proceedings.
 
 Walton v. Nix
 
 9
 Chester Walton's complaint, filed in 1986, challenges disciplinary action taken in 1986 that resulted in a forfeiture of good-time credits. In his answer to the state's petition for interlocutory appeal, Walton indicates that he filed a state postconviction action in 1984, which was dismissed in 1985 for failure to prosecute. He apparently did not appeal the dismissal. Walton further states he was unable to prosecute his state action because he did not have contact with his attorney and therefore was unaware of any hearings or that his action had been dismissed. Because the district court did not have this information before it, we remand to the district court with directions that Walton's complaint be dismissed unless he establishes cause for his failure to prosecute his state action or appeal its dismissal.
 
 Reese v. Farrier
 
 10
 Charles Reese's complaint, filed in July 1987, challenges the results of disciplinary action taken between September 1984 and February 1985, and also alleges violations of his Eighth Amendment rights by reason of brutality at the hands of prison guards. Reese seeks damages, restoration of good-time credits, and expungement of disciplinary records. He filed a state postconviction action in May 1987 challenging some of the disciplinary proceedings. The action was dismissed in 1988 when Reese did not appear at a hearing. He did not appeal the dismissal. Accordingly, as in Walton v. Nix, we remand for a determination of whether Reese can establish cause for his failure to appear at the hearing or appeal the dismissal. If not, his claims arising from the disciplinary proceedings must be dismissed. Because Reese's Eighth Amendment claim does not involve good-time credits, it is not governed by Offet, and may proceed in district court.
 
 Mahers v. Nix
 
 11
 Ronald Mahers filed his section 1983 claim seeking damages and restoration of the good-time credits he lost as the result of a prison disciplinary hearing. Mahers initiated an administrative appeal from his disciplinary hearing, and received a rehearing at which the results of the first disciplinary hearing were confirmed. He did not file an action in state court, but filed this suit raising a number of due process challenges to both hearings, and challenging the constitutionality of the length of his disciplinary detention. The district court considered this a "mixed" complaint, noting Mahers would not be able to challenge his first hearing or the length of his detention in a state postconviction action because the loss of good-time credits stemmed from his second hearing which he could challenge in a chapter 663A proceeding. Accordingly, the court noted Mahers could reframe his complaint and drop those challenges subject to the Offet exhaustion requirement, i.e., those challenges which would result in a restoration of good-time credits. We agree.
 
 
 12
 As an alternative, the district court gave Mahers an option of waiving his right to proceed in state court under chapter 663A or habeas corpus, or waiving his right to estop the state from relitigating the issues decided in his section 1983 claim in any subsequent state action. Arguably, such a waiver option adequately addresses the interests of federalism that underlie the exhaustion requirement in habeas cases. Nevertheless, we believe adoption of such a solution is problematic at best, and at worst could produce the untenable result of a federal court first ruling that an inmate is entitled to a monetary award for unconstitutional deprivation of his good-time credits, and a state court later denying restoration of those same good-time credits. Accordingly, we hold that Offet may not be avoided by resort to the waiver option that the district court here employed.
 
 
 13
 In his answer to the state's petition for interlocutory appeal, however, Mahers indicates that he filed an action for postconviction relief in state court to avoid any statute of limitations problems. The record contains no disposition of that case. Because the district court did not have this information before it, we remand for a determination of whether Mahers has exhausted his state remedies. If he has not, his complaint must be stayed unless he amends it to delete the claims that are subject to the Offet exhaustion requirement.
 
 Burgin v. Farrier
 
 14
 Laurence Burgin's section 1983 claim challenges forty-four disciplinary proceedings brought against him from February 29, 1984, through April 14, 1987. Although Burgin lost good-time credits, he requests only damages, release from lock-up, and prospective injunctive relief. After the state filed its motion to stay the proceedings, Burgin filed actions in state court challenging some of the disciplinary proceedings. The state court dismissed eight of Burgin's complaints as being barred by the statute of limitations.
 
 
 15
 We remand for consideration of whether he can demonstrate cause for his failure to present these claims to the state court in a timely manner. On remand, the district court should also determine whether any of Burgin's remaining claims are barred by the state statute of limitations applicable to section 1983 actions, and if not, whether Burgin has exhausted his state remedies with respect to these claims or can demonstrate cause for his failure to do so. If he has not, then his section 1983 action must be stayed with respect to these claims as required by Offet.
 
 
 16
 HEANEY, Senior Circuit Judge, concurring and dissenting.
 
 
 17
 I agree that Bressman is consistent with this court's opinion in Offet v. Solem, 823 F.2d 1256 (8th Cir.1987). Offet, however, was wrongly decided. Offet is contrary to congressional intent, it is inconsistent with decisions of the United States Supreme Court, and it disregards binding precedents of this court. We are required to adhere to our former decisions until and unless this court adopts Offet en banc. I thus am bound by our pre-Offet decisions and I must dissent in Bressman. I also dissent in Mahers, Goff v. Nix, Walton, Reese, and Burgin for the same reasons, because each of these cases extends Offet beyond its present rationale, and because each conflicts with past decisions of this circuit. In my view, the court en banc must rehear the above cases to resolve the conflicts in our decisions.
 
 
 18
 The majority is correct that exhaustion is not required in Brewer, Whited, and Goff v. Dailey, and that Offet should not apply to them. I thus concur in these three cases.
 
 I. BACKGROUND
 
 19
 Offet justifies new restrictions on the access of state prison inmates to federal court in 1983 cases as an incident of federalism and on the basis of the Supreme Court's decision in Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).[3] Ultimately, the validity of Offet depends on whether the statutes which create inmate access to federal court require the restrictions. I thus pause to review the applicable statutes and the holdings in Preiser and Offet.
 
 
 20
 Congress has created a statutory system that allows state prison inmates to use section 1983 actions and habeas corpus writs to raise federal constitutional challenges to the conditions or duration of their confinement. 28 U.S.C.A. Sec. 2254 (1977) (habeas corpus); 42 U.S.C.A. Sec. 1983 (1981). Section 1983 allows citizens to sue for violations of their federal civil rights. A 1983 plaintiff may sue for damages and is not required to exhaust state judicial or administrative remedies before proceeding in federal court. See Patsy v. Florida Bd. of Regents, 457 U.S. 496, 500-07, 102 S.Ct. 2557, 2559-63, 73 L.Ed.2d 172 (1982). Jurisdiction is nevertheless concurrent in federal and state courts. If a citizen elects to proceed in state court, the state court judgment may have a preclusive effect on the same claims brought in a subsequent federal proceeding. Allen v. McCurry, 449 U.S. 90, 101, 101 S.Ct. 411, 418, 66 L.Ed.2d 308 (1980). Habeas corpus actions are available to citizens confined in state prisons and historically have served to insure that state criminal proceedings and state criminal law conform to federal constitutional standards. To give states the first opportunity to correct their own mistakes, a prisoner bringing a habeas corpus action must exhaust state judicial remedies before proceeding in federal court. 28 U.S.C.A. Sec. 2254(b). To preserve meaningful federal review, however, the state court judgment is not res judicata on conclusions of law in a subsequent habeas corpus suit brought in federal court on the same grounds. 28 U.S.C.A. Sec. 2254(d); Preiser, 411 U.S. at 497, 93 S.Ct. at 1840. Habeas corpus is now also available for challenges to prison disciplinary proceedings that extend the duration of an inmate's confinement. See Peyton v. Rowe, 391 U.S. 54, 63-64, 88 S.Ct. 1549, 1554-55, 20 L.Ed.2d 426 (1968) (allowing habeas challenges even where there was no immediate release from confinement, overruling McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934)).
 
 
 21
 In Preiser v. Rodriguez, the Supreme Court concluded that a section 1983 complaint challenging prison disciplinary proceedings and seeking only injunctive relief was sufficiently "close to the core of habeas corpus" that habeas corpus relief should be an exclusive remedy, requiring the exhaustion of state remedies. 411 U.S. at 489-91, 93 S.Ct. at 1836-37. The prisoner's claim can be refiled in its entirety as a federal habeas claim, so the state's legal conclusions about federal rights are still subject to de novo review in federal court. Preiser thus protects Congress's express desire for state judicial exhaustion of habeas corpus claims. Id. at 489-90, 93 S.Ct. at 1836.
 
 
 22
 The Supreme Court did not intend that an exhaustion requirement be applied to section 1983 suits seeking damages,[4] nor has the Court applied it to damage claims even where the issue presented was the legitimacy of disciplinary decisions which resulted in a loss of good-time credits. See Wolff v. McDonnell, 418 U.S. 539, 553-55, 94 S.Ct. 2963, 2973-74, 41 L.Ed.2d 935 (1974).[5] The Court distinguished between damage claims and requests for an injunction ordering release or the restoration of good time, and the Court expressly authorized simultaneous federal and state litigation involving the same disciplinary proceeding where the federal section 1983 complaint sought damages unavailable in habeas proceedings.
 
 
 23
 Preiser expressly contemplated that claims properly brought under Sec. 1983 could go forward while actual restoration of good-time credits is sought in state proceedings.... Respondent's damages claim was therefore properly before the District Court and required determination of the validity of the procedures employed for imposing sanctions, including loss of good time, for flagrant or serious misconduct.
 
 
 24
 Id. at 554-55, 94 S.Ct. at 2974.
 
 
 25
 The Offet panel, over a strong dissent by Judge Richard A. Arnold, discarded the Supreme Court's relief-based distinction, fearing that in cases where the federal court acted first on the prisoner's claim, the application of res judicata principles would restrict the ability of state tribunals to independently correct any errors regarding the disciplinary proceeding. 823 F.2d at 1258. Offet requires that a federal action challenging a disciplinary proceeding that resulted in a loss of good time be stayed pending state exhaustion if a federal decision would have a preclusive effect in a subsequent state post-conviction proceeding, even where the prisoner seeks damages unavailable in state post-conviction proceedings. Id. at 1259.
 
 II. OFFET WAS WRONGLY DECIDED
 
 26
 A. Offet is Inconsistent with Congressional Intent.
 
 
 27
 "[T]he initial question whether exhaustion is required should be answered by congressional intent; and a court should not defer the exercise of jurisdiction under a federal statute unless it is consistent with that intent." Patsy, 457 U.S. at 501-02, 102 S.Ct. at 2560 (emphasis added); Coit Independence v. FSLIC, 489 U.S. ----, ----, 109 S.Ct. 1361, 1372, 103 L.Ed.2d 602, 619 (1989).
 
 
 28
 Section 1983 provides every citizen with a federal civil remedy in federal court for the violation of federal rights. Section 1983 allows immediate access to federal court and does not include any requirement that state remedies be exhausted.[6]
 
 
 29
 The history of section 1983 reveals that Congress intended the federal courts to assume a primary role in the guarantee of federal rights. Section 1983 is "an important part of the basic alteration in our federal system wrought in the Reconstruction era through federal legislation and constitutional amendment." Mitchum v. Foster, 407 U.S. 225, 238-42, 92 S.Ct. 2151, 2160-62, 32 L.Ed.2d 705 (1972). Opponents of the Civil Rights Act of 1871 had objected that it unfairly invaded the province of the states. Id. at 241-42 & n. 32, 92 S.Ct. at 2161-62 & n. 32.[7] Congress brushed aside these criticisms and enacted what has become section 1983 pursuant to its powers under the fourteenth amendment to secure due process of law. Steffel v. Thompson, 415 U.S. 452, 464 n. 13, 94 S.Ct. 1209, 1218 n. 13, 39 L.Ed.2d 505 (1974). "... Congress clearly conceived that it was altering the relationship between the States and the Nation with respect to the protection of federally created rights.... The very purpose of Sec. 1983 was to interpose the federal courts between the States and the people...." Mitchum v. Foster, 407 U.S. at 242, 92 S.Ct. at 2162 (emphasis added).
 
 
 30
 Section 1983 and the writ of habeas corpus reflect Congress's decision to provide all Americans, including prison inmates, with the right to have a federal court ultimately decide the scope of their federal rights. Congress has required prisoners to exhaust state remedies in only two circumstances: in habeas corpus claims under 28 U.S.C. Sec. 2254(b) and in 1983 actions in states with grievance procedures which conform to federal standards. 42 U.S.C.A. Sec. 1997e(a) (1981).[8] Under section 1997e, a prisoner's 1983 claim must be stayed for ninety days by a federal district court pending state administrative review of the prisoner's grievance. In all other circumstances, Congress has intended that federal court jurisdiction for prisoners' section 1983 suits be immediately available. Patsy, 457 U.S. at 512, 102 S.Ct. at 2565.
 
 
 31
 Initially, congressional sentiment with respect to section 1983 exhaustion is clearly revealed in the legislative history of section 1997e. The President's Crime Commission and private studies had recommended the establishment of prison grievance mechanisms as a means of enabling prison authorities to anticipate internal problems and as an aid to good morale. 125 Cong.Rec. 12491 (1979) (remarks of Rep. Drinan). Adoption of prison grievance procedures is voluntary under section 1997e; the purpose of 1997e was to provide incentives to the states "to stimulate the development and implementation of effective administrative mechanisms for the resolution of grievances in correctional and pretrial facilities...." H.R.Rep. No. 96-80, 96th Cong., 1st Sess. 4 (1979) (House Report). The House Judiciary Committee anticipated that "[t]he effect of H.R. 10 would be to improve the quality of life for institutionalized persons, and to assist in relieving the caseloads of Federal courts in prisoner petitions." Id. The exhaustion requirement of section 1997e was suggested by the minority members of the Judiciary Committee, was "strongly endorsed by the States," and passed with bipartisan support. 124 Cong.Rec. 11976 (1978) (remarks of Rep. Kastenmeier); House Report at 3.[9]
 
 
 32
 Offet is inconsistent with section 1997e in two ways. First, Offet overwhelms the incentive Congress offered the states to develop grievance mechanisms. Congress concluded that the development of state prison grievance procedures was desirable and offered essentially an administrative exhaustion rule as an incentive for the adoption of state grievance procedures. Offet, however, allows state prison authorities to subject prisoner claims to state judicial exhaustion without participation in the section 1997e program. While there are non-disciplinary grievances, states will have less incentive to certify their grievance procedures when the effect of Offet is understood. "This purpose would be frustrated by judicial discretion to impose exhaustion generally: the States would have no incentive to adopt grievance procedures capable of certification...." Patsy, 457 U.S. at 511-12, 102 S.Ct. at 2565.
 
 
 33
 Second, Offet is inconsistent with Congress's understanding when it enacted section 1997e. The hearings and debates are replete with recognition that exhaustion is generally not required of prisoner complaints under section 1983. "For many years, some of us have felt that the requirement of exhaustion of remedies would be desirable in the case of 1983 actions, but for various reasons it has been impossible to implement this requirement. The bill, however, makes a modest approach at an exhaustion of remedies requirement." 124 Cong.Rec. 23180 (1978) (remarks of Rep. Wiggins).[10]
 
 
 34
 The Supreme Court recognized the intent of Congress in Patsy v. Florida Board of Regents, a decision not considered by Offet. In Patsy, the Court extensively reviewed the legislative history of section 1997e and declined to require exhaustion of administrative remedies in a section 1983 suit. 457 U.S. at 507-12, 102 S.Ct. at 2563-66. The Court concluded that with 1997e, Congress believed it was creating an exception to exhaustion rules, and that "[i]mplicit in this decision is Congress's conclusion that the no-exhaustion rule should be left standing with respect to other Sec. 1983 suits." Id. at 509, 102 S.Ct. at 2564.
 
 
 35
 Section 1997e and its legislative history demonstrate that Congress understood that exhaustion is not generally required in Sec. 1983 actions, and that it decided to carve out only a narrow exception to this rule. A judicially imposed exhaustion requirement would be inconsistent with Congress' decision to adopt Sec. 1997e and would usurp policy judgments that Congress has reserved for itself.
 
 
 36
 Id. at 508, 102 S.Ct. at 2563. Justice O'Connor, joined by Justice Rehnquist, concurred, expressing the hope that Congress would consider expanding exhaustion requirements. Id. at 516-17, 102 S.Ct. at 2568 (O'Connor, J., concurring).
 
 
 37
 Next, Offet is inconsistent with congressional intent because it effectively prevents some prisoners from ever having their legal claims adjudicated by a federal court. If a prisoner wants to challenge the legality of any aspect of a disciplinary proceeding in which one sanction imposed affects his release date, Offet forces him to go first to state court. If the prisoner loses in state court, he can appeal to a state appeals court. If he loses again, he can file a habeas action in federal court. At the same time, he can file a companion section 1983 action requesting damages, provided the 1983 action is stayed pending resolution of the habeas claims. This procedure can take years. Often the prisoner will no longer be incarcerated by the time state remedies are exhausted and federal court jurisdiction is invoked. Because habeas claims relating to disciplinary decisions can usually be pursued only by confined persons, under Offet, many short-term prisoners will be unable to obtain federal court review of the state's legal conclusions. If they pursued state relief first, they will be estopped from seeking damages under section 1983 for asserted violations of their federal rights because federal habeas relief will be unavailable, even though their damage claims are not moot.[11] This is inconsistent with the congressional policy of making available to every citizen federal adjudication of the scope of federal civil rights. It also effectively stymies the development of federal law by federal courts.
 
 
 38
 Finally, Offet surrenders control of federal court jurisdiction to state prison officials. It encourages prison officials always to include the loss of good-time credits as a sanction to defeat a prisoner's right to a federal hearing. As the Seventh Circuit concluded in deciding not to follow Offet, "... Offet, ultimately proves too much.... [T]he state could insulate every imposition of discipline from attack under section 1983 by simply revoking one hour, or one day, of good time as part of every punishment.... We cannot accept such off-hand treatment of the importance to a state prisoner of prompt access to federal court under section 1983...." Viens v. Daniels, 871 F.2d 1328, 1333 (7th Cir.1989) (Cudahy, Easterbrook, and Ripple). For example, today the majority concludes that Charles Reese must exhaust state remedies because he was sanctioned with a loss of good-time credits, ante at 1308, even though Reese is serving a life term without possibility of parole. By sanctioning Reese with a meaningless loss of good-time credits, his disciplinary committee delayed his access to federal court. In the name of enhancing federal-state comity, Offet places control of federal court jurisdiction in the hands of unelected state prison disciplinary committees.
 
 
 39
 B. Offet is Inconsistent with Decisions of the United States
 
 
 40
 Supreme Court.
 
 
 41
 Offet misconstrues the Supreme Court's decisions in Preiser and Wolff, and disregards other decisions.[12] In Wolff, the Supreme Court reviewed the disciplinary procedures of the Nebraska state prison and established new hearing standards to apply to future cases. 418 U.S. at 555-72, 94 S.Ct. at 2974-82. The Court dismissed the plaintiffs' claims for restoration of their good-time credits, but held that Preiser did not require exhaustion of the inmates' claims for damages and declaratory relief. Id. at 554-55, 94 S.Ct. at 2973-74. Judge Arnold correctly concludes in his dissent that Preiser and Wolff create a relief-based distinction and that Offet misconstrues these two decisions. See Offet, 823 F.2d at 1261-63 (Arnold, J., dissenting).[13] In response, Offet offers several arguments for distinguishing Wolff.
 
 
 42
 Initially, Offet reasons that Wolff granted prospective relief only and thus did not allow federal decisions which would constrain state courts. 823 F.2d at 1260. This distinction is unpersuasive. First, a federal court's grant of prospective relief from a current prison practice on constitutional grounds would necessarily influence a subsequent state proceeding. It would produce at the very least results indistinguishable from Judge O'Brien's waiver option found "untenable" by today's majority. Ante at 1309. Second, Wolff cannot be construed as limited to prospective relief because the inmates in Wolff sought damages for the past acts of the defendants, and the Court concluded that the legal issues underlying their damage claims did not have to be exhausted in state court. 418 U.S. at 555, 94 S.Ct. at 2974. While the Court limited the application of the newly announced standards, the Court did not foreclose damage claims based on violations of due process apparent at the time of the violation. Accordingly, it cannot be said that "Wolff clearly was intended to be entirely prospective in nature ...," 823 F.2d at 1260, nor does limiting Wolff to prospective relief resolve federal-state comity problems.
 
 
 43
 Next, Offet argues that Wolff had not considered the res judicata effects of federal decisions on subsequent state proceedings. Wolff concluded, however, that "Preiser expressly contemplated that claims properly brought under Sec. 1983 could go forward while actual restoration of good-time credits is sought in state proceedings." 418 U.S. at 554, 94 S.Ct. at 2974. The Court added in an accompanying footnote that "[o]ne would expect that normal principles of res judicata would apply in such circumstances." Id. n. 12. Offet nevertheless justifies the extension of Preiser's exhaustion requirement based on the unacceptable res judicata effects of a federal ruling on subsequent state proceedings. 823 F.2d at 1258. Offet speculates that the Court was simply unaware of the implications of its footnote in Wolff, or had not "considered ... fully the preclusive effect of a federal ruling ...," and may have been thinking only of the res judicata effects of state judgments on subsequent 1983 proceedings. 823 F.2d at 1260. The claim that the Court never considered the res judicata effects of a federal decision is absolutely essential to Offet's license to fashion new exhaustion rules consistent with federal-state comity. The claim is, however, unsupportable.
 
 
 44
 First, the majority in Wolff added a footnote discussing res judicata to show that it was aware of the potential implications of its decision and intended no special res judicata rule for 1983 plaintiffs. The Court had been invited to fashion a special res judicata rule by the dissent in Preiser, lest the "traditional principles of res judicata" lead to federal and state decisions terminating simultaneous suits in the other forum. Preiser, 411 U.S. at 509 n. 14, 511, 93 S.Ct. at 1846 n. 14, 1847 (Brennan, J., dissenting). Instead, in Wolff, the Court anticipated the application of "normal" res judicata principles. Under normal res judicata rules, a decision in federal or state court has a preclusive effect in a subsequent proceeding in either forum, except where an exception is created by statute. See, e.g., 28 U.S.C. 2254(d) (limited res judicata effect of state post-conviction decisions). It thus seems clear that the Court understood that federal decisions would have res judicata effects on subsequent state proceedings and accepted that consequence. Accord Williams v. Ward, 556 F.2d 1143, 1151, 1153-54 (2d Cir.) (Friendly, J.), cert. dismissed, 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323 (1977).
 
 
 45
 Second, the Supreme Court was reviewing a decision of this Court. See McDonnell v. Wolff, 483 F.2d 1059 (8th Cir.1973). We construed Preiser to create a relief-based distinction between 1983 suits and habeas corpus. Id. at 1064. We recognized that a federal decision would have a res judicata effect on state proceedings and concluded that indeed the Court had authorized simultaneous federal and state proceedings.
 
 
 46
 We recognize that the above result may mean that the federal courts may often establish minimum due process standards for all types of disciplinary hearings for serious misconduct in state prisons and that there may be simultaneous litigation in state and federal courts, but the Supreme Court anticipated these results would probably occur. Preiser ... n. 14....
 
 
 47
 Id. It is thus highly unlikely that the Wolff Court was unaware of the issue or "may have only been thinking of the res judicata effects of state judgments on subsequent 1983 proceedings." Offet, 823 F.2d at 1260.
 
 
 48
 Third, the Supreme Court's decision earlier in the same term in Steffel v. Thompson also refutes Offet's gloss on Wolff. Steffel sought a declaratory judgment that a prospective state criminal prosecution would violate his constitutional rights. The Court distinguished between the enjoining of current state criminal proceedings and declaratory relief in advance of a threatened prosecution, allowing Steffel's suit to go forward. 415 U.S. at 469, 475, 94 S.Ct. at 1220, 1223. Justice Rehnquist, joined by Chief Justice Burger, concurred, expressing the view that the decision did not reach "whether the granting of a declaratory judgment by a federal court will have any res judicata effect...." Id. at 479, 94 S.Ct. at 1226 (Rehnquist, J., concurring). He concluded that a federal declaratory judgment would not be res judicata in state court and would not support the issuance of an injunction against state action. Id. at 479-85, 94 S.Ct. at 1225-28. Justice White wrote separately to express his disagreement with Justice Rehnquist. "At this writing at least, I would anticipate that a final declaratory judgment entered by a federal court ... should be accorded res judicata effect in any later prosecution of that very conduct." Id. at 477, 94 S.Ct. at 1225. This supports the view that the Court understood that federal decisions would have res judicata effects on state proceedings when, three months later, Justice White authored the Wolff opinion discussing "normal" principles of res judicata. 418 U.S. at 554 n. 12, 94 S.Ct. at 2974 n. 12.[14]
 
 
 49
 Wolff clearly limited the scope of Preiser and federal-state comity concerns. Although federal decisions have res judicata effects on state proceedings, exhaustion is still not required except in the limited class of Preiser cases where only injunctive relief is sought and habeas is a complete substitute. Offet simply reads too much into Preiser. The subsequent decisions of the Court in Wolff, Greenholtz, and Gerstein, allowing prisoner suits for damages where earlier release from confinement was sought, make it apparent that:
 
 
 50
 [A]t least one of the premises of Preiser is not absolute: either (1) comity does not bar Sec. 1983 claims that, if successful, would cast doubt on--but not ultimately determine--the constitutionality of state administrative decisions and state court convictions or (2) with regard to such claims, state administrative decisions are not always due the same level of deference as state court convictions and sentencing decisions.
 
 
 51
 Serio v. Louisiana Bd. of Pardons, 821 F.2d 1112, 1116 (5th Cir.1987) (emphasis in original). The Supreme Court's subsequent decisions make clear that Preiser represents the limits of the Court's willingness to supplement Congress's pronouncements on exhaustion, and that the relief-based distinction created by Supreme Court decisions is to be followed by this court.[15]C. Offet is Inconsistent with Past Decisions of this Circuit.
 
 
 52
 Offet asserts that a conflict exists between prior opinions of this circuit and announces, "[a]ccordingly, we approach this case as one in which our decision will establish the rule for this Circuit." 823 F.2d at 1258. The relation between section 1983 suits and habeas corpus was explored at least nine times by panels of this circuit prior to the decision in Offet. There was no prior conflict and the Offet panel lacked the authority to announce the rule for the circuit.[16]
 
 
 53
 We had repeatedly permitted state prisoners to bring in federal court section 1983 damage actions challenging disciplinary decisions which resulted in a loss of good-time credits. See Brown v. Frey, 807 F.2d 1407, 1408 (8th Cir.1986); Graham v. Baughman, 772 F.2d 441, 443 (8th Cir.1985);[17] Eugene v. Klecker, 636 F.2d 250, 251 (8th Cir.1980) (per curiam); Glouser v. Parratt, 605 F.2d 419 (8th Cir.1979) (per curiam); Kelsey v. Minnesota, 565 F.2d 503, 506 (8th Cir.1977); Finney v. Arkansas Bd. of Correction, 505 F.2d 194, 206, 212 (8th Cir.1974) (loss of good time suffered but relief requested unclear); see also Smallwood v. Missouri Bd. of Probation & Parole, 587 F.2d 369, 371 (8th Cir.1978) (interpreting Preiser and Wolff to separate damage and injunctive claims); Inmates v. Greenholtz, 576 F.2d 1274, 1278 n. 2 (8th Cir.1978) (class action procedural challenge to state parole procedures), rev'd on other grounds, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); McDonnell v. Wolff, 483 F.2d at 1064 (relief-based test). The two per curiam opinions cited by Offet as evidence of a conflict within this circuit both involved attacks on criminal convictions while state criminal proceedings were still pending and thus did not create a conflict with cases involving disciplinary proceedings.[18]
 
 
 54
 Accordingly, prior to Offet, the clear rule in this circuit was that a 1983 complaint attacking a criminal conviction was subject to abstention or exhaustion.[19] If a prisoner was not attacking his original conviction, whether exhaustion was required was determined by the type of relief sought.[20] If there was a prior conflict in our decisions, the Offet panel should have referred the issue to the court sitting en banc.
 
 
 55
 Until en banc review, we must adhere to our first decided case, consistent with the rule that no panel can overturn a previous panel decision. United States v. Edelman, 873 F.2d 791, 794 (5th Cir.1989); Johnson v. Moral, 843 F.2d 846, 847-48 (5th Cir.1988).[21] Offet thus cannot announce the rule for the circuit nor can it be relied on, but it has created a present conflict requiring en banc review.
 
 
 56
 III. OFFET SHOULD NOT BE EXTENDED TO TODAY'S CASES
 
 
 57
 Today's decision greatly expands the scope of Offet in three respects. Even if I were obliged to follow Offet, I would disagree with these applications of it.
 
 
 58
 A. Procedural Claims.
 
 
 59
 Mahers' complaint raised several due process challenges to his disciplinary hearing. For example, he argued that he was denied access to evidence considered by the disciplinary committee, alleging that he was told that he would have to pay for copies to be made before he could see the statements. Complaint at 6 (No. 86-408-E) (Dec. 2, 1985). Due process challenges to hearing procedures such as this go to the manner, not the outcome, of the proceeding. If successful, Mahers might receive a new hearing. While Mahers surely hopes to eventually have any and all sanctions lifted as the result of a fair hearing, it is not certain or even probable that state authorities will restore his good-time credits.
 
 
 60
 Exhaustion should not be required in this case for several reasons. First, post-Preiser Supreme Court decisions have not viewed due process challenges to prison disciplinary procedures or parole procedures as challenges to the fact or duration of confinement. See Greenholtz, 442 U.S. at 3, 99 S.Ct. at 2102 (permitting section 1983 suit to proceed challenging the parole procedures used where the duration of confinement was thus implicated); Gerstein, 420 U.S. at 107 n. 6, 95 S.Ct. at 859 n. 6; Wolff, 418 U.S. at 555, 94 S.Ct. at 2974 (disciplinary).[22] Second, this court and other circuits have also made this distinction. In Greenholtz, we expressly distinguished between attacks on the manner as opposed to the outcome of prison proceedings. Inmates v. Greenholtz, 576 F.2d at 1278 n. 2. If this distinction was incorrect, surely the Supreme Court would not have decided the merits in that case. Other decisions of this circuit have also allowed inmate due process challenges to disciplinary proceedings,[23] as has nearly every other circuit.[24] Third, state authorities retain the right to fix the prisoner's period of confinement. The federal court would, at most, order only a new hearing. The majority, however, seemingly relying on Offet, reaches a different conclusion.
 
 
 61
 Offet requested a declaration that a recent state law requiring the forfeiture of one day of good-time credit for every day served in punitive confinement was an ex post facto law as applied to him. 823 F.2d at 1257. He did not challenge any particular disciplinary or parole proceeding or disciplinary or parole procedures generally. It is not surprising, therefore, that the Offet panel chose to reject the use of the procedure/outcome distinction in "cases such as this one," 823 F.2d at 1259, since Offet did not challenge hearing procedures. Yet, today's decision apparently reads Offet as already having decided that a distinction can never be drawn between procedural attacks and challenges to the outcome of the hearings. Ante at 1308-1309. The majority does not explain its reasoning. The result, however, suggests a wholesale expansion in Offet's scope.[25]
 
 
 62
 With today's decision in Mahers, Offet now seemingly stands for the proposition that exhaustion is required when a federal decision might indirectly lead to a change in the duration of confinement by requiring reconsideration of a prisoner's status according to lawful procedure. This represents an expansion of Offet from those situations where the federal judgment directly decides whether a loss of good time is warranted to cases where state authorities still make that decision. It cannot be justified by the reasoning of past precedent. It ignores the Supreme Court's own interpretation of the "fact or duration" of confinement in Greenholtz, Gerstein, and Wolff. I am at a loss to explain this result or how this panel could have the authority to disregard recent decisions of this circuit.
 
 
 63
 B. Cause and Prejudice.
 
 
 64
 In Goff v. Nix, Walton, Reese, and Burgin, the majority requires the prisoners to show cause and prejudice for failing to exhaust state remedies. The cause and prejudice test was developed in habeas cases to preserve the integrity of state trials against the sandbagging of issues. Wainwright v. Sykes, 433 U.S. 72, 89, 97 S.Ct. 2497, 2507, 53 L.Ed.2d 594 (1977); id. at 91-94, 97 S.Ct. at 2509-10 (Burger, C.J., concurring). In my view, it has no application to pro se 1983 suits. The joining of Wainwright v. Sykes with Offet completes the de facto imposition of an exhaustion requirement on section 1983 plaintiffs, clearly inconsistent with controlling authority. Where there is a default, the majority bars any federal hearing on a prisoner claim even where state relief is unavailable.
 
 
 65
 Moreover, those prisoners, who have no legal training and only limited direct access to legal materials, should not be held at fault for failing to anticipate Offet. There is sufficient cause in the manifest unfairness of applying Offet retroactively to prisoners who could not anticipate its result, where previous case law had led them to believe that exhaustion was not required and where the state statute of limitations has expired, leaving them no state or federal forum to hear the merits of their claims. See Reed v. Ross, 468 U.S. 1, 14-15, 104 S.Ct. 2901, 2909-10, 82 L.Ed.2d 1 (1984) (changes in the law provide cause); Fay v. Noia, 372 U.S. 391, 426-27, 83 S.Ct. 822, 842-43, 9 L.Ed.2d 837 (1963) (ultimate power to review unconstitutional acts).
 
 
 66
 C. Life Prisoners.
 
 
 67
 Charles Reese is presently serving a life sentence and is ineligible for parole. See Iowa Code Ann. Sec. 902.1 (West Supp.1989). He can be released from custody only if the governor commutes his sentence. His complaint does not implicate the fact or duration of confinement because in his case the receipt or loss of good-time credits is meaningless. The application of Offet to Reese accords talismanic effect to good-time penalties where there is no real change in the duration of confinement. It opens the door to the meaningless award and the meaningless revocation of the good-time credits of life prisoners as a means of hindering their access to federal court.
 
 IV. CONCLUSION
 
 68
 Since Congress enacted the habeas exhaustion requirement of 28 U.S.C. 2254 in 1948, the reach of the "Great Writ" has grown. It is only relatively recently that prisoners have been allowed to challenge disciplinary decisions in habeas actions. Habeas corpus has not, however, effectively supplanted section 1983 as a remedy for prisoners because habeas remedies are limited to changes in the duration of confinement. Only when no other relief is desired can a habeas petition ever be the functional equivalent of a section 1983 action. Only because no damages were requested in Preiser was the Court able to view habeas as the proper avenue for those plaintiffs' claims. Preiser is thus best understood as effectuating congressional control of exhaustion requirements. Preiser, 411 U.S. at 489-90, 93 S.Ct. at 1836.
 
 
 69
 Offet subjects damage claims to exhaustion and cannot be justified as merely following the logic of Preiser. Preiser did not announce a policy to construe section 1983 consistently with an independent judicial policy of federalism. The Supreme Court, in fact, usually construes section 1983 as exempt from federal-state comity concerns.[26] Nor has Congress ordered our jurisdiction with only states' rights in mind. As Judge Arnold suggested in dissent, "[p]erhaps the answer is that the policy favoring exhaustion is not the only policy operating in this area. There is also a policy, stated by Congress in Sec. 1983, making available a federal forum for actions complaining of deprivation of federal rights under color of state law." Offet, 823 F.2d at 1262.
 
 
 70
 The Supreme Court has repeatedly indicated that the balancing of these policy considerations should be left to legislative control. "It is for Congress to determine whether Sec. 1983 litigation has become too burdensome to state or federal institutions and if so, what remedial action is appropriate." Tower v. Glover, 467 U.S. at 923, 104 S.Ct. at 2826; see also Patsy, 457 U.S. at 512, 102 S.Ct. at 2565 (policy arguments regarding judicial workload, federal-state comity, and state expertise cannot justify the judicial imposition of exhaustion requirements). Proposals for changes in prisoner exhaustion rules are thus properly addressed to Congress, not the courts. Id. at 513, 102 S.Ct. at 2565. Offet, however, short circuits the political process. Justice Blackmun has remarked:
 
 
 71
 My second response to the criticisms concerning the impact of Sec. 1983 on federalism is that to the extent the statute does create problems, those problems are political rather than judicial. It is not improper, of course, to take issue with the balance struck by the Reconstruction Congresses, nor is it improper to call for greater deference toward the States. We must recognize, however, that such arguments are better addressed to Congress than to the courts. It is not enough to argue before a court that a particular construction of Sec. 1983 is inconsistent with "principles of federalism" or "federal-state comity." To do so is to put the cart before the horse, for the only principles of federalism and comity that justify restricting the scope of Sec. 1983 are those found in the Constitution or Sec. 1983 itself. We must avoid the temptation to let "federalism" become the Natural Law of the 1980's, a brooding omnipresence to which duly enacted statutes are made to pay homage. Indeed, there is more than a little irony in litigants' and commentators' asking the Supreme Court to restrict the scope of Sec. 1983 in order to prevent unwarranted intrusions on the democratic processes of state governments. If Sec. 1983 as presently construed does shift political authority from elected officials to unelected judges--and I do not concede that it does--the remedy, it seems to me lies with the elected members of the Senate and House of Representatives and not with the unelected members of the Supreme Court.
 
 
 72
 Blackmun, Section 1983, 60 N.Y.U.L.Rev. at 23 (emphasis added).
 
 
 73
 The Constitution gives Congress the power to determine the scope of our jurisdiction. Ultimately, the validity of Offet must rise or fall based on Offet's accuracy in faithfully and respectfully construing congressional intent. Nowhere in the text of Offet is that task undertaken.
 
 
 
 *
 The Honorable Gerald W. Heaney assumed senior status effective January 1, 1989
 
 
 [1]
 The Honorable David R. Hansen, United States District Judge for the Northern District of Iowa
 
 
 [2]
 The Honorable Donald E. O'Brien, United States District Judge for the Southern District of Iowa
 
 
 [3]
 The majority in Offet indicated that it was concerned to protect "the concerns of federalism," "federal--state comity," "respect for state autonomy," "the policy announced in Preiser," and "Preiser's policy requiring exhaustion." 823 F.2d at 1258-60
 
 
 [4]
 The Court's language creating this relief-based distinction between section 1983 and habeas claims was quite clear
 [R]espondents here sought no damages, but only equitable relief--restoration of their good-time credits--and our holding today is limited to that situation. If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release--the traditional purpose of habeas corpus. In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy. Accordingly, as petitioners themselves concede, a damage action by a state prisoner could be brought under the Civil Rights Act in federal court without any requirement of prior exhaustion of state remedies.
 Preiser, 411 U.S. at 494, 93 S.Ct. at 1838 (emphasis added).
 
 
 [5]
 The Court also held that Preiser did not foreclose declaratory relief at the outset of a 1983 action regarding disciplinary procedures, nor did Preiser apply to claims for prospective relief. Wolff, 418 U.S. at 555, 94 S.Ct. at 2974
 
 
 [6]
 Section 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 42 U.S.C. Sec. 1983.
 
 
 [7]
 See generally Blackmun, Section 1983 and Federal Protection of Individual Rights--Will the Statute Remain Alive or Fade Away?, 60 N.Y.U.L.Rev. 1, 6-7 (1985) (history)
 
 
 [8]
 This section was enacted as part of the Civil Rights of Institutionalized Persons Act, Pub.L. No. 96-247, 94 Stat. 349 (1980). The Act also granted the Attorney General of the United States the power to investigate and prosecute alleged deprivations of the civil rights of persons residing in state institutions
 
 
 [9]
 Within our circuit, only Iowa and Nebraska have been certified in compliance with federal standards. Iowa's procedures were certified in July 1985. Nebraska was certified in September 1987. Missouri first applied for certification in May 1987 and was granted conditional certification in June 1988. States that have been certified pursuant to section 1997e show a decline in prisoner petitions. See Annual Report of the Director of the Administrative Office of U.S. Courts, Appendix I, Detailed Statistical Tables, table C-3; see also Lay, Exhaustion of Grievance Procedures for State Prisoners Under Section 1997e of the Civil Rights Act, 71 Iowa L.Rev. 935, 938, 944 (1986) (noting decline in 1983 suits)
 
 
 [10]
 See also id. at 15445 (remarks of Rep. Ertel); House Report at 26, 48 (remarks of Rep. Kastenmeier, subcommittee chairman, and Peggy Weisberg, staff attorney for the A.C.L.U., viewing 1997e as a restriction of prisoner rights); id. at 159 (remarks of Rep. Kindness) (opposing expansion of Attorney General powers because individual rights guaranteed by section 1983 provide adequate federal remedy); 125 Cong.Rec. 12496 (1979) (remarks of Rep. Butler)
 Concern for the right of the states to have the opportunity to first consider the conditions addressed in the bill was swept aside by the most conservative of congressmen. "I do not intend to wave the flag of no Federal intervention for another 200 years, while the inhumane conditions this legislation seeks to alleviate go on and on." 125 Cong.Rec. 12499 (1979) (remarks of Rep. Hyde).
 [T]his is not a conservative versus liberal question. This is not a question of the federal government overstepping its bounds.... It seems to me that the question of states' rights does not apply here. These are rights the individuals already have. All we are attempting to do is to facilitate the means by which they might bring this question to the forefront. There is no doubt in my mind that one group is probably the one that really has no advocacy here. That is the prisoners of America.
 Id. (remarks of Rep. Lungren).
 
 
 [11]
 The relief-based distinction developed in Preiser and Wolff does not create a similar "gap" in the enforcement of federal rights. If a prisoner is seeking an earlier release and he is released before he can file a federal habeas claim, the case will be moot, absent continuing consequences from the state's conduct which may permit continuing habeas jurisdiction. A relief-based distinction is thus not arbitrary in light of the continuing access to federal court it provides prisoners consistent with congressional purpose
 
 
 [12]
 See, e.g., Patsy v. Florida Bd. of Regents, 457 U.S. at 512, 102 S.Ct. at 2565 (Congress "has taken the approach of carving out specific exceptions to the general rule that federal courts cannot require exhaustion under Sec. 1983."); Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 3, 99 S.Ct. 2100, 2102, 60 L.Ed.2d 668 (1979) (deciding merits of section 1983 class action challenging parole procedures); Gerstein v. Pugh, 420 U.S. 103, 107 n. 6, 95 S.Ct. 854, 859 n. 6, 43 L.Ed.2d 54 (1975) (request for hearing challenging detention not governed by Preiser ); Steffel v. Thompson, 415 U.S. at 464, 469, 472-73, 94 S.Ct. at 1218, 1220, 1222-23 (allowing federal declaratory relief from impending state prosecution); Wilwording v. Swenson, 404 U.S. 249, 251, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1971) (per curiam) (state prisoners not held to different standard of exhaustion)
 
 
 [13]
 I note that the dissenters in Preiser believed that this was the Court's holding. Preiser, 411 U.S. at 510, 93 S.Ct. at 1846 (Brennan, J., dissenting). Moreover, Judge Bork, who argued Wolff before the Supreme Court, held, while a member of the District of Columbia Circuit, that a relief-based test was adopted in Preiser and Wolff. Monk v. Secretary of the Navy, 793 F.2d 364, 367-68 (D.C.Cir.1986)
 
 
 [14]
 Offet also argues that the issue of how to separate habeas and 1983 claims was never resolved by Preiser and Wolff in light of the Court's language in Tower v. Glover, 467 U.S. 914, 923, 104 S.Ct. 2820, 2826, 81 L.Ed.2d 758 (1984). Offet, 823 F.2d at 1260. I agree that it may not be apparent how Preiser and Wolff apply to conviction challenges, but Tower does not support the view that Wolff did not draw a relief-based line with respect to disciplinary proceedings. The plaintiff in Tower was an inmate who pursued simultaneously state post-conviction relief and a federal 1983 action for damages against various state officials and two of his former lawyers alleging a conspiracy to convict him. By the time the Court heard the case, his state remedies were exhausted. The Court noted that it thus had "no occasion to decide if a Federal District Court should abstain from deciding a Sec. 1983 suit for damages stemming from an unlawful conviction pending the collateral exhaustion of state-court attacks on the conviction itself." 467 U.S. at 923, 104 S.Ct. at 2826 (emphasis added)
 It has long been the rule that federal courts should abstain from interfering in ongoing state criminal proceedings. Younger v. Harris, 401 U.S. 37, 43-45, 91 S.Ct. 746, 750-51, 27 L.Ed.2d 669 (1971); see also Wooley v. Maynard, 430 U.S. 705, 711, 97 S.Ct. 1428, 1433, 51 L.Ed.2d 752 (1977) (abstain only from reviewing current proceedings); Gibson v. Berryhill, 411 U.S. 564, 573-74, 93 S.Ct. 1689, 1695-96, 36 L.Ed.2d 488 (1973) (comity generally counsels that a federal court should not enjoin ongoing proceedings); Id. n. 13 (exhaustion policy not strong with respect to non-Younger state judicial proceedings). Moreover, as the Court noted, even with respect to conviction disputes, the application of Preiser was not reached or argued in Tower. Tower, 467 U.S. at 923, 104 S.Ct. at 2826. The Court was also careful to note that with respect to section 1983 litigation, Congress retained control of federal jurisdiction. Id.
 
 
 [15]
 No other circuit follows Offet. The District of Columbia, First, and Tenth Circuits use the relief-requested test. See, e.g., Monk v. Secretary of the Navy, 793 F.2d at 367-68 (D.C.Cir.); Chatman-Bey v. Thornburgh, 864 F.2d 804, 810 n. 6 (D.C.Cir.1988) (en banc); Lanier v. Fair, 876 F.2d 243, 244 n. 1 (1st Cir.1989); Schuemann v. Colorado, 624 F.2d 172, 173 n. 1 (10th Cir.1980); Gregory v. Wyse, 512 F.2d 378, 381 (10th Cir.1975). Recent panels in the Seventh and Eleventh Circuits indicated that they also thought Supreme Court decisions required a relief-based distinction. Viens v. Daniels, 871 F.2d at 1331-33; Gwin v. Snow, 870 F.2d 616, 623-24, 627 (11th Cir.1989). The Second, Third, Fourth, and Eleventh Circuits follow an immediate effect test. They require exhaustion when a federal decision would have to directly decide that a loss of good-time credits was in error. Mack v. Varelas, 835 F.2d 995, 998-99 (2d Cir.1987); Williams v. Ward, 556 F.2d at 1150-51 (2d Cir.); Georgevich v. Strauss, 772 F.2d 1078, 1087 (3d Cir.1985) (en banc), cert. denied, 475 U.S. 1028, 106 S.Ct. 1229, 89 L.Ed.2d 339 (1986); Harper v. Jeffries, 808 F.2d 281, 283-84 (3d Cir.1986); Todd v. Baskerville, 712 F.2d 70, 73 (4th Cir.1983); McKinnis v. Mosely, 693 F.2d 1054, 1057 (11th Cir.1982) (per curiam); see also Young v. Kenny, 887 F.2d 237 (9th Cir.1989). The Sixth Circuit employs this test when convictions are at issue, but does not when disciplinary procedures are challenged. See Hadley v. Werner, 753 F.2d 514, 516 (6th Cir.1985) (per curiam) (attack on conviction controlled by Preiser despite prayer for damages); Feaster v. Miksch, 846 F.2d 21, 22-24 (6th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 148, 102 L.Ed.2d 120 (1988); Bills v. Henderson, 631 F.2d 1287 (6th Cir.1980) (disciplinary proceedings); see also Buchanan v. Wilson, 875 F.2d 862 (6th Cir.1989) (No. 88-6386, table; citation limited before courts of Sixth Circuit, 6th Cir.R. 24(c)) (1989 WL 461140, 1989 U.S.App.Lexis 6191) (relief-requested controls). The Seventh Circuit focuses on the core of the dispute, examining the claim to determine if the purpose of the suit is to challenge the revocation of good-time credits. See Viens v. Daniels, 871 F.2d at 1330. Where significant other sanctions are imposed, exhaustion of state remedies is not required despite the fact that a favorable decision would cause reinstatement of the prisoner's good-time credits. Id. at 1333-34; see also Scruggs v. Moellering, 870 F.2d 376, 378-79 (7th Cir.) (suit ancillary to conviction challenge), cert. denied, --- U.S. ----, 110 S.Ct. 371, 107 L.Ed.2d 357 (1989). The Fifth Circuit requires, for reasons of judicial convenience and as a synthesis of past circuit cases, the exhaustion of any 1983 complaint that might lead to the earlier release of any party. Serio, 821 F.2d at 1117-19. But see Williams v. McCall, 531 F.2d 1247, 1248 (5th Cir.1976) (per curiam) (single procedural claim not subject to exhaustion). Although the Eleventh Circuit accepts as binding many of the Fifth Circuit decisions relied on by Serio, it has squarely rejected Serio. See Gwin v. Snow, 870 F.2d at 625-66
 
 
 [16]
 "A decision of a panel of this court is the law of the circuit and we are compelled to follow it." Dudley v. Dittmer, 795 F.2d 669, 673 (8th Cir.1986); accord Foss v. United States, 865 F.2d 178, 180 (8th Cir.1989); Brown v. First Nat'l Bank, 844 F.2d 580, 582 (8th Cir.1988); United States v. Lewellyn, 723 F.2d 615, 616 (8th Cir.1983)
 
 
 [17]
 Graham was no longer confined by the time we considered his 1983 claim. 772 F.2d at 443 n. 2. Under Offet, Graham would have had to exhaust state remedies and proceed by habeas corpus in federal court. His release would have likely ended his suit and denied him a federal hearing. We found his due process claim meritorious and rejected the defendants' qualified immunity claim. Id. at 443-47
 
 
 [18]
 Miner v. Brackney, 719 F.2d 954 (8th Cir.1983) (per curiam), cert. denied, 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 856 (1984); Franklin v. Webb, 653 F.2d 362 (8th Cir.1981) (per curiam). In Miner, the plaintiff filed a 1983 claim for damages and injunctive relief while his state criminal proceedings were still ongoing, alleging that a witness report was false. We affirmed the dismissal of this suit because it required intervention into ongoing criminal proceedings. We noted that exhaustion was not generally required under section 1983, except "when disposition of the civil suit would require federal intervention in a matter presently pending in state court.... [T]he federal court must weigh the potential disruption of the orderly administration of criminal justice against potential harm to the litigant." 719 F.2d at 956 (citing Younger v. Harris, and three cases from other circuits, all of which distinguished between challenges to convictions and disciplinary proceedings). Franklin also involved a section 1983 challenge to a conviction before state criminal proceedings had ended. 653 F.2d at 363 ("Franklin asserts in his response to the show cause order that the district court improperly applied the abstention doctrine to this case."). See also Feeney v. Auger, 808 F.2d 1279, 1280-81 (8th Cir.1986) (applying Preiser to 1983 attack on constitutionality of habitual offender statute)
 
 
 [19]
 This first principle requires a restrained reading of Wolff, applying as it does to claims for noninjunctive relief. It also tends to merge abstention and exhaustion doctrines for reasons of federal-state comity. In my view, however, it best reflects Congress's intent when it required exhaustion of habeas corpus claims
 
 
 [20]
 This requires a restrained reading of Preiser, drawing as it does a distinction between convictions and other state functions. See Preiser, 411 U.S. at 491-92, 93 S.Ct. at 1837. This distinction, however, was clearly drawn by Congress after Preiser when, with section 1997e, it enacted different exhaustion rules for prisoner 1983 suits than for habeas corpus relief. It has also been drawn subsequently by the Court. See supra note 12. Most circuits also distinguish between challenges to convictions and other 1983 suits. See Monk v. Secretary of the Navy, 793 F.2d at 367-68 (D.C.Cir.); Fernandez v. Trias-Monge, 586 F.2d 848, 852 n. 4 (1st Cir.1978) (pre-trial detention); Hamlin v. Warren, 664 F.2d 29, 31-32 (4th Cir.1981), cert. denied, 455 U.S. 911, 102 S.Ct. 1261, 71 L.Ed.2d 451 (1982); Hadley v. Werner, 753 F.2d at 516 (6th Cir.); Bills v. Henderson, 631 F.2d at 1291, 1299 (6th Cir.); Scruggs v. Moellering, 870 F.2d at 379 (7th Cir.); Crump v. Lane, 807 F.2d 1394, 1400 n. 5 (7th Cir.1986); Parkhurst v. Wyoming, 641 F.2d 775, 777 n. 1 (10th Cir.1981); Gwin v. Snow, 870 F.2d at 626 (11th Cir.)
 
 
 [21]
 There may be situations in which a Supreme Court decision or legislative act clearly supersedes a past opinion of this court. In such a case, a panel may deviate from the prior circuit opinion. This is not such a case. While rehearings en banc are to be granted only rarely, 8th Cir.R. VI(D), a panel decision that conflicts with past decided cases is appropriate for a rehearing en banc
 A petition requesting or suggesting hearing or rehearing en banc should be filed only when the attention of the entire court need be directed to an issue of grave constitutional dimension or exceptional public importance or to an opinion that directly conflicts with prior Supreme Court or Eighth Circuit precedent.
 8th Cir.R. 16(c).
 
 
 [22]
 But see Preiser, 411 U.S. at 480-81, 93 S.Ct. at 1831-32. To the extent that Preiser is read to subject procedure claims to exhaustion, it leaves the relief-based distinction as the only way to explain the differing results of these Supreme Court cases
 
 
 [23]
 See, e.g., Brown v. Frey, 807 F.2d at 1409; Graham v. Baughman, 772 F.2d at 443; see also Burnside v. White, 760 F.2d 217 (8th Cir.), cert. denied, 474 U.S. 1022, 106 S.Ct. 576, 88 L.Ed.2d 559 (1985):
 The role of this Court in the present case is not to make the determination whether we, sitting as the Board of Parole, would have chosen to release Burnside, but rather to determine whether the decision not to release Burnside was made in accordance with the demands of the Constitution. This Court plainly has both the power and duty to undertake that review.
 Id. at 219.
 
 
 [24]
 See Lanier v. Fair, 876 F.2d at 244 n. 1 (1st Cir.); Williams v. Ward, 556 F.2d at 1150 (2d Cir.); Georgevich v. Strauss, 772 F.2d at 1086 (3d Cir.); Todd v. Baskerville, 712 F.2d at 73 (4th Cir.) (distinction depends on source of damages alleged); Williams v. McCall, 531 F.2d at 1248 (5th Cir.); Bills v. Henderson, 631 F.2d at 1291, 1299 (6th Cir.); Hanson v. Heckel, 791 F.2d 93, 96 n. 6 (7th Cir.1986) (per curiam); Clutchette v. Procunier, 497 F.2d 809, 812-13 (9th Cir.1974), as modified, 510 F.2d 613 (1975), rev'd on different grounds sub nom. Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); Candelaria v. Griffin, 641 F.2d 868, 869 (10th Cir.1981) (per curiam); Gwin v. Snow, 870 F.2d at 624 (11th Cir.); see also Monk v. Secretary of the Navy, 793 F.2d at 367 (D.C.Cir.) (broader rule); but see Serio, 821 F.2d at 1117-18 (5th Cir.)
 
 
 [25]
 Only two published decisions of this circuit since Offet have applied Offet to require exhaustion of state remedies. Lumpkin v. McKennon, 882 F.2d 342 (8th Cir.1989) (per curiam); Jones v. Smith, 835 F.2d 175 (8th Cir.1987) (per curiam). Both cases appear to have involved challenges to the sufficiency of the evidence. Two other decisions did not reach the exhaustion issue. Sprouse v. Babcock, 870 F.2d 450 (8th Cir.1989) (good-time credits restored by prison authorities); Manis v. Sterling, 862 F.2d 679, 680 (8th Cir.1988) (complaint insufficient to state a claim)
 
 
 [26]
 See Mitchum v. Foster, 407 U.S. at 242, 92 S.Ct. at 2162 (exempt from limits of the Anti-Injunction Act). "Congress has taken the approach of carving out specific exceptions to the general rule that federal courts cannot require exhaustion under Sec. 1983. It is not our province to alter the balance struck by Congress in establishing the procedural framework for bringing actions under Sec. 1983." Patsy, 457 U.S. at 512, 102 S.Ct. at 2565